**Chris LINEGAR, Petitioner,**

v.

**DLA PIPER LLP (US), Respondent**

NO. 14–0767

Supreme Court of Texas.

Argued February 10, 2016

OPINION DELIVERED: May 27, 2016

Elizabeth Bloch, Husch Blackwell LLP, Austin TX, Lisa Bowlin Hobbs, Kuhn Hobbs PLLC, Austin TX, Donald R. Taylor, Taylor Dunham and Rodrguez, LLP,

Austin TX, Natalie A. Taylor, Shrum Taylor PLLC, Austin TX, for Petitioner.

Russell S. Post, Fields Alexander, Geoffrey Alan Gannaway, Constance H. Pfeiffer, Beck Redden LLP, Houston TX, William Robert Peterson, Morgan, Lewis & Bockius LLP, Houston TX, for Respondent.

JUSTICE JOHNSON delivered the opinion of the Court.

The question before us is whether Chris Linegar, an individual beneficiary of a self-directed retirement account managed by a corporate trustee, had standing to sue DLA Piper, LLP (US) for legal malpractice based on advice the firm allegedly gave him regarding a loan from the retirement account to a third party. The trial court rendered judgment for Linegar based on a jury verdict. The court of appeals concluded that Linegar lacked standing to sue the firm, reversed, and rendered judgment for DLA Piper. We disagree that Linegar lacked standing to sue the firm. We reverse the judgment of the court of appeals and remand to that court for further proceedings.

## I. Background

In 2004, Chris Linegar, an Australian businessman, formed Key Ovation, LLC, which he later divided into Key Ovation, LLC and IdentiPHI, LLC. In 2008, IdentiPHI, LLC merged with Saflink Corporation to form IdentiPHI, Inc. (IdentiPHI), a corporation in which Linegar was a major stockholder. The law firm of DLA Piper LLP (US) represented Saflink in the merger process, while the law firm of Akin & Almanza represented IdentiPHI, LLC. Following the merger, DLA Piper represented IdentiPHI as corporate counsel.

During the merger process it became apparent that IdentiPHI needed a short-term bridge loan while it attempted to secure permanent financing. At that time, Linegar served as Chairman, Director, and majority shareholder of Zaychan PTY, Ltd., the corporate trustee of the Linegar Superannuation Fund (Fund), which is an Australian self-managed retirement trust with Linegar and his now ex-wife as the sole beneficiaries. Linegar arranged for the Fund to lend 1.75 million Australian dollars (approximately 1.67 million USD) to IdentiPHI. DLA Piper represented IdentiPHI in the transaction, and the firm also worked directly with Linegar during the relevant time frame. On March 12, 2008, IdentiPHI executed a promissory note to Zaychan, which was "agreed and accepted" by Linegar as Chairman and Director of Zaychan, and which contained a clause granting Zaychan a security interest in all of IdentiPHI's assets. The note was payable on or before June 29, 2008, and it was important that it be timely paid in order to keep the self-directed retirement account in compliance with Australian law.

When it became apparent that IdentiPHI was going to default on the loan, Linegar took several actions. One was to contact his pre-merger Texas lawyer, Rick Akin of Akin & Almanza. Akin discovered that a UCC–1 financing statement had not been filed to perfect Zaychan's security interest in IdentiPHI's assets. Another action Linegar took was to mortgage his home and use the proceeds to pay the loan balance to the Fund before the June 30 deadline. As part of the transaction to make the Fund whole before June 30, the original note from IdentiPHI to Zaychan was extended, renewed, and assigned by Zaychan to Key Ovation, LLC. Key Ovation then executed a promissory note to Linegar for the amount IdentiPHI still owed. Later, Key Ovation signed a replacement note in favor of Linegar, clarifying that it agreed to pay him only what

Key Ovation was able to collect on the original note from IdentiPHI.

IdentiPHI filed for bankruptcy on February 11, 2009. Had the security interest in the March 2008 note to Zaychan been timely perfected, Key Ovation, and thus Linegar, would have recovered the full amount due under the note—approximately $1.67 million. Instead, the debt was subject to challenge under section 547 of the Bankruptcy Code, at least in part because Zaychan's security interest was not perfected until after Akin discovered the situation in June 2008. *See* 11 U.S.C. § 547(b) (2007). The result was that Key Ovation, the holder of the assigned note, settled its claim in bankruptcy for $150,000, which it in turn paid to Linegar.

Linegar, Zaychan, and Key Ovation sued DLA Piper and DLA Piper lawyer Michael Hutchings for legal malpractice, negligent misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, and deceptive trade practices. They claimed that the firm and Hutchings advised Linegar individually regarding the loan, including assuring him that it would be perfected. The trial court granted DLA Piper's motion for summary judgment as to Zaychan; Key Ovation nonsuited its claims; the claims against Hutchings were nonsuited; and Linegar's individual claims against DLA Piper were tried to a jury. During trial Linegar testified that Hutchings told him before the loan was made that the loan would be secured and "everything would be taken care of." Linegar also testified that he would not have directed or authorized Zaychan to make the loan to IdentiPHI but for Hutchings's assurances. DLA Piper and Hutchings, on the other hand, disputed that Hutchings made the alleged statements and maintained that Hutchings never agreed or implied that he or the firm

would look out for Linegar's individual interests regarding the loan transaction.

The jury found that DLA Piper (1) injured Linegar by negligently failing to advise him that the firm did not represent him; (2) made a negligent misrepresentation to Linegar regarding the March 2008 note from IdentiPHI to Zaychan on which Linegar justifiably relied, causing him injury; (3) committed fraud as to Linegar by failing to disclose a material fact to him and the failure injured him; (4) had an attorney-client relationship with Linegar at some time from February 18, 2008 to June 17, 2008, and its negligence in that relationship proximately caused injury to Linegar; and (5) did not comply with its fiduciary duty to Linegar. The jury apportioned 10% responsibility for Linegar's injury to him, apportioned 90% responsibility to DLA Piper, and found Linegar's damages to be $1,293,606. The trial court rendered judgment on the jury verdict and DLA Piper appealed.

Although the firm raised eight issues on appeal, the appeals court determined that Linegar did not have standing to bring suit, reversed and rendered judgment for DLA Piper, and did not address any other issues. —— S.W.3d ——, —— (Tex.App.–Eastland 2014). In reaching its decision, the court of appeals reasoned that Linegar lacked standing because: (1) Zaychan, not Linegar, was the holder of the IdentiPHI note, so any misrepresentation about the note or its secured status would necessarily have been made to Zaychan; (2) Linegar did not gain standing by replenishing the trust with personal funds; and (3) Linegar lacked standing as a beneficiary of the retirement account because there was no evidence Zaychan, as trustee, could not have or would not have enforced a cause of action against DLA Piper. *Id.* at ——.

In this Court, Linegar argues that (1) he had standing to sue DLA Piper because he

did not sue on the note but rather sought damages for breaches of duties the firm owed to him individually; (2) his claims were not derivative of Zaychan's claims, nor did he seek to recover on losses Zaychan, as a corporate entity, may have suffered; (3) the court of appeals erred by concluding that Zaychan was the only entity with an interest in the funds and the only party to whom DLA Piper could have made relevant misrepresentations; and (4) DLA Piper is estopped from arguing that if any entity suffered damages it was Zaychan, because it took the position in the trial court that Zaychan did not suffer damages and obtained summary judgment against Zaychan on that basis.

DLA Piper responds that the rules of trustee-beneficiary standing and corporation-shareholder standing apply; although Linegar is a beneficiary of the trust and a shareholder of the corporation, he did not legally own the trust property and had no individual standing to sue for injuries to the trust or its property; and Linegar neither personally relied on DLA Piper nor suffered a "direct loss" that would permit him to sue individually. According to DLA Piper, the crucial fact for standing purposes is that Zaychan, not Linegar, made the loan to IdentiPHI.

## II. Discussion

### A. Law

■ A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; rather, it must be proved. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993). Standing is a question of law for the court to determine, although facts necessary to the determination may need to be determined by the factfinder. *See id.* at 446; *West v. Brenntag Sw., Inc.*, 168 S.W.3d 327, 334 (Tex.App.–Texarkana 2005, pet. denied). As relevant to this matter, we recently summarized general standing principles as follows:

> In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.... The plaintiff must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large) suffered the injury.... [The injury] must be concrete and particularized, actual or imminent, not hypothetical.... [T]he plaintiff's alleged injury must be fairly traceable to the defendant's conduct.... [And] the plaintiff's alleged injury [must] be likely to be redressed by the requested relief.

*Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154–55 (Tex.2012) (emphasis omitted) (citations omitted). The standing analysis begins with determining the nature of the wrong being alleged and whether there was a causal connection between a defendant's conduct and the injury caused by the alleged wrong. *See id.* Standing is assessed on a claim-by-claim basis. *Id.* at 153.

■ Both parties and the court of appeals reference *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex.1990) and its progeny, regarding stockholder standing. In *Wingate*, we stated the general rule that "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Id.* at 719. We clarified that the general rule does not preclude a stockholder from recovering damages for wrongs done to the stockholder individually, provided the wrongdoer violated a duty "'owing directly by [the wrongdoer] to the stockholder.'" *Id.* (quoting *Mass. v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942)). "However, to recover individually, a stockholder must

prove a personal cause of action and personal injury." *Id.*

## B. Application

Linegar argues that he alleged, proved, and obtained a jury finding that an attorney-client relationship existed between him individually and DLA Piper. That being so, he asserts, he has standing because the firm owed a duty to him individually, which it breached, causing him to direct Zaychan to make the loan to IdentiPHI and suffer an individual loss, regardless of whether Zaychan suffered a corporate loss. He says that DLA Piper mischaracterizes his claim as a suit on the note but that he did not sue on the note— he sued for malpractice and other torts by the attorneys who represented and advised him. Given his claims, he urges, it is irrelevant that he was not a party to, or holder of, the note between IdentiPHI and Zaychan. Further, although Zaychan was the legal holder of the note at the time it was made, the note was in exchange for money from the Fund that he directed Zaychan to lend to IdentiPHI, and any loss on the note would not have fallen on Zaychan and its corporate assets, but on him as a beneficiary. Citing our opinion in *Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997), Linegar claims that a shareholder "has standing to bring a malpractice claim against a professional who gives bad advice directly to the shareholder on which he relies and causes the corporation to act." In sum, Linegar argues that DLA Piper advised not only Zaychan, but Linegar individually. That, he urges, resulted in Linegar individually acting on the advice and suffering a direct loss as a result of the advice and DLA Piper's failure to timely perfect the security interest in IdentiPHI's assets so as to ensure payment of the March 2008 note.

Several years after *Wingate* was decided, we were presented with a standing issue in the context of corporate stockholders in *Murphy v. Campbell*. In *Murphy*, the three major stockholders of Colonial Food Stores, Inc. (collectively, Murphy) were looking to sell the business, but only if they could each net $2 million after taxes and other obligations. *Murphy*, 964 S.W.2d at 267. Murphy sought advice from Colonial's accountant and auditor, Touche Ross & Co., about the tax consequences of a sale. Based on the advice Touche Ross gave, Murphy accepted a purchase offer from National Convenience Stores, Inc., for Colonial's assets. *Id.* Colonial then dissolved and distributed its assets and liabilities to the stockholders. *Id.* Later, Murphy received a formal deficiency notice from the Internal Revenue Service (IRS) claiming that Colonial owed taxes because of the transaction with National Convenience Stores. *Id.* Murphy settled with the IRS for over $700,000 in taxes plus interest, then sued Touche Ross over its advice. *Id.* Touche Ross argued that Murphy lacked standing because any wrong it may have done would have been to Colonial, not its individual stockholders. *Id.* at 268. Citing *Wingate*, we held that because Touche Ross counseled the individual stockholders directly and the tax consequences of the IRS ruling fell directly on them, they suffered a direct loss and had standing to assert a cause of action against Touche Ross separate from any claim Colonial might have had as a corporation. *Id.* We reasoned that Touche Ross advised both Colonial and its stockholders regarding the tax consequences of Colonial's selling its assets, but the tax treatment of the asset sale was less important to Colonial than it was to its stockholders who effected the sale as part of a plan to liquidate the company and upon whom the effects of the tax treatment would directly fall. *See id.*

As Linegar points out, DLA Piper is making essentially the same argument Touche Ross made in *Murphy* as to the stockholders—that Linegar suffered no damages and lacked standing to assert his claims because any wrong DLA Piper did was to Zaychan as a corporate entity, not to Linegar individually. *See id.* But that is not how Linegar pleaded, tried, and submitted the case to the jury. He alleged that DLA Piper wrongfully advised him in his individual capacity, just as Touche Ross was alleged to have wrongfully advised the individual stockholders in *Murphy*. Linegar alleged that he directed Zaychan to make the loan to IdentiPHI based on assurances he individually received from DLA Piper that the loan was safe. Linegar also alleged that the perfected status of the security interest in IdentiPHI's assets was more important to him than it was to Zaychan because the end effect of a loss on the loan would fall directly on him, and not Zaychan, because Zaychan's corporate assets were not at risk. Moreover, given the circumstances and potential consequences if the loan was not repaid by June 30, 2008, thereby making the Fund out of compliance with Australian law, the only realistic option available was for Linegar to repay the loan to the Fund and have the note assigned by Zaychan so Linegar could recover the money he paid to the Fund. The note was assigned to Key Ovation, which pursued payment and eventually made a claim when IdentiPHI declared bankruptcy. Further, only questions related to Linegar, individually, were submitted to the jury. The jury found that DLA Piper breached duties it owed to Linegar arising from an attorney-client relationship between them, and that Linegar individually relied on DLA Piper's advice in causing the loan to be funded from the Fund. Finally, as noted above, whether the loan's security interest was timely perfected was less important to

Zaychan, who as trustee was merely holding legal title to the Fund, than to Linegar.

DLA Piper attempts to distinguish this case from both *Murphy* and *Wingate* by arguing that those cases stand for the proposition that Linegar lacks standing unless he can prove "direct reliance" on DLA Piper's legal advice and "direct loss" as a result of relying on that advice. However, the case before us was pleaded, tried, and submitted to the jury on that very basis: Linegar was seeking redress for wrongs done to him individually causing damages he individually suffered. To have standing to bring such claims, Linegar was required to allege and prove that DLA Piper owed him a duty individually and that he was personally and concretely aggrieved by the firm's breach of that duty. *See Heckman*, 369 S.W.3d at 154. He met this threshold burden, just as the stockholders in *Murphy* did. Linegar's pleadings alleged that he, individually, relied on DLA Piper's advice in deciding that his self-directed retirement plan should lend money to IdentiPHI and in causing the loan to be made. There was evidence that Zaychan loaned the money to IdentiPHI because Linegar individually directed it to do so. And there was evidence that Linegar caused Zaychan to make the loan because of the assurances he individually and personally received from DLA Piper that the loan would be secure from loss. Under the circumstances, the loss on the original loan Zaychan made to IdentiPHI in March 2008 fell substantively and directly on Linegar and gave him standing to seek recovery for the loss.

We recognize that, as trustee, Zaychan had duties that included the duties to hold, invest, and protect the Fund's assets. And the general rule is that ordinarily—but not always—the trustee is the proper plaintiff to bring suit for losses the trust

suffers. *See* RESTATEMENT (THIRD) OF TRUSTS § 107 cmt. b (2012). However, we need not look to see if an exception to the general rule applies here because the case was not tried on claims that DLA Piper violated duties it owed to Zaychan as trustee, nor on a claim that the trust assets for which Zaychan was trustee suffered a loss. The case was pleaded, tried, and submitted to the jury on claims that DLA Piper violated duties it owed to Linegar in his individual capacity and that those violations proximately caused damages to him individually. As noted above, there was evidence to support the allegations. That is sufficient to show standing, which is the only issue before us.

### III. Conclusion

Linegar, individually, had standing to make a claim against DLA Piper. We reverse the judgment of the court of appeals and remand the cause to that court for it to consider the issues it did not previously reach.

JUSTICE GUZMAN did not participate in the decision.