Mary GUERRERO–MCDONALD,
Appellant

v.

Jimmy NASSOUR and Lavista
Partners—GP, LLC,
Appellees

No. 11–14–00085–CV

Court of Appeals of Texas,
Eastland.

Opinion filed March 16, 2017

and worked seasonally sorting pecans.

Don Cruse, Law Office of Don Cruse, Eric J. Taube, Mark C. Taylor, Taube Summers Harrison, Taylor Meinzer Brown LLP, Austin, TX, for appellant.

Michael S. Truesdale, Law Office of Michael S. Truesdale PLLC, Isabelle M. Antongiorgi, Donald R. Taylor, Taylor Dunham Rodriguez LLP, Austin, TX, for appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

JOHN M. BAILEY, JUSTICE

This appeal concerns the standing of a limited partner to sue both the general partner and another limited partner after a failed real estate project. It also involves an application of the economic loss doctrine to preclude a recovery for negligent misrepresentation. We affirm in part and reverse and remand in part.

### Background Facts

This limited partnership dispute arises out of an unsuccessful effort to revive a failed real estate development project. Mary Guerrero–McDonald initially partnered with the now-deceased Gene Fondren to develop a condominium project at 1701 Lavaca in downtown Austin. This initial project was called "1701 Lavaca LP." The initial project stalled due to monetary issues and Fondren's declining health.

Guerrero–McDonald subsequently sought additional investors for the project. Guerrero–McDonald, Jimmy Nassour, Jim Mattox, and Pike Family Partnership, LP formed LaVista Partners LP for the purpose of acquiring and developing the project. Guerrero–McDonald converted her prior interests in the project into a thirty-five percent limited partnership interest in the newly formed limited partnership. The limited partners selected LaVista Partners—GP, LLC as the general partner of the limited partnership. H.M. Pike Jr. executed the partnership agreement on behalf of LaVista Partners—GP, LLC in his capacity as its manager.[1] Nassour also

---

1. Pike also executed the partnership agreement on behalf of the Pike Family Partnership, LP in his capacity as its general partner.

served as one of the initial managers of the general partner.

The limited partnership failed after being unable to procure financing to complete the project. Guerrero–McDonald subsequently sued Appellees, LaVista Partners—GP, LLC (the general partner), and Nassour (another limited partner) for breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation.[2] The trial court granted Appellees' motion for summary judgment with respect to Guerrero–McDonald's claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation.

The case subsequently went to trial on Guerrero–McDonald's remaining claim for fraud. The trial court imposed a discovery sanction against Guerrero–McDonald by deeming a request for admission to be "admitted." The jury returned a verdict in favor of Appellees on the fraud claim. The trial court entered judgment that Guerrero–McDonald take nothing from Appellees. Guerrero–McDonald appeals the trial court's judgment in five issues.

## Analysis

Guerrero–McDonald's first three issues concern the claims resolved by summary judgment. Additionally, Appellees present a cross-point raising six alternative grounds why the summary judgment should be upheld. Guerrero–McDonald's final two issues involve claims resolved at trial.

■ We will address the summary judgment issues first. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When the trial court's summary judgment order specifies the ground or grounds upon which it was granted, we generally limit our consideration to the ground or grounds upon which it was granted. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996).

### Standing

■ The trial court's summary judgment order specified that it granted Appellees' motion for summary judgment on Guerrero–McDonald's claims for breach of contract and breach of fiduciary duty based upon its determination that she lacked standing to bring the claims. Guerrero–McDonald challenges these determinations by the trial court in her first (standing for breach of fiduciary duty claim) and second (standing for breach of contract claim) issues. Because Guerrero–McDonald's arguments are the same for her first two issues, we will address them together.

Appellees asserted the issue of standing as a traditional summary judgment ground. A party seeking a traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Appellees asserted that they were entitled to summary judgment on Guerrero–McDonald's "breach of contract claims and breach of fiduciary duty claims because she lacks standing; the claims she asserts are for alleged injuries primarily suffered by the Limited Partnership."

■ The Texas Supreme Court recently addressed standing in *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276 (Tex. 2016). "A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; rather, it

2. Guerrero–McDonald also sued Pike. Pike was no longer a party at the time the final judgment was entered, and he is not a party to this appeal.

must be proved." *Id.* at 279 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993)). "Standing is a question of law for the court to determine, although facts necessary to the determination may need to be determined by the factfinder." *Id.* Standing is a matter that concerns the jurisdiction of a court to afford the relief requested, rather than the right of a plaintiff to maintain a suit for the relief requested. *Sneed v. Webre*, 465 S.W.3d 169, 186 (Tex. 2015) (citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). As noted by the court in *Linegar*:

> In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court .... The plaintiff must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large) suffered the injury .... [The injury] must be concrete and particularized, actual or imminent, not hypothetical .... [T]he plaintiff's alleged injury must be fairly traceable to the defendant's conduct.... [And] the plaintiff's alleged injury [must] be likely to be redressed by the requested relief.

*Linegar*, 495 S.W.3d at 279 (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154–55 (Tex. 2012)). The standing analysis begins with determining the nature of the wrong being alleged and whether there was a causal connection between a defendant's conduct and the injury caused by the alleged wrong. *Id.* Standing is assessed on a claim-by-claim basis. *Id.*

The court in *Linegar* relied on its earlier decision in *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990), and its progeny dealing with stockholder standing. 495 S.W.3d at 279. In *Wingate*, the court stated the general rule that "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." 795 S.W.2d at 719. The general rule does not preclude a stockholder from recovering damages for wrongs done to the stockholder individually, provided the wrongdoer violated a duty owed directly by the wrongdoer to the stockholder. *Id.* "However, to recover individually, a stockholder must prove a personal cause of action and personal injury." *Id.*

*Wingate* addressed stockholder standing in a corporate context. However, its holding has been relied upon in other contexts when an individual stakeholder in another form of a legal entity seeks to recover personally, including situations where a limited partner attempts to bring a claim individually. *See, e.g., Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250 (Tex. App.–Dallas 2005, no pet.) (citing *Wingate* for the proposition that "[a]n individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity"). Appellees rely upon a line of these cases from the Dallas Court of Appeals addressing the standing of a limited partner to assert a claim individually. *See Hall v. Douglas*, 380 S.W.3d 860, 873–74 (Tex. App.–Dallas 2012, no pet.); *Nauslar*, 170 S.W.3d at 249–50.

*Hall* involved a limited partner who sued the limited partnership and other limited partners for breach of the partnership agreement and breach of fiduciary duty. 380 S.W.3d at 872. The limited partner sought "disgorgement" of partnership funds that he alleged were improperly transferred to a third party to pay nonpartnership debts. *Id.* at 873. The court in *Hall* began its analysis of standing by noting that "[a] person has standing to sue when he is personally aggrieved by the alleged wrong." *Id.* at 872 (citing *Nootsie Ltd. v. Williamson Cty. Appraisal Dist.*,

925 S.W.2d 659, 661 (Tex. 1996)). "Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." *Id.* at 873. "Only the person whose primary legal right has been breached may seek redress for an injury." *Id.*

The court held in *Hall* that "[a] limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest." *Id.* (citing *Swank v. Cunningham*, 258 S.W.3d 647, 661 (Tex. App.–Eastland 2008, pet. denied); *Nauslar*, 170 S.W.3d at 250–51). The court held: "To distinguish between injuries suffered by a partnership, for which [the limited partner] lacks standing, and those suffered directly by [the limited partner], we must focus on the nature of the alleged injury." *Id.* at 874. The limited partner must be personally aggrieved in order to have standing to bring a claim individually. *Id.* (citing *Nauslar*, 170 S.W.3d at 249–51). The court concluded that, because the limited partner asserted that the defendants misappropriated the limited partnership's funds, the alleged harm was to the limited partnership alone, even though the economic impact of the alleged wrongdoing may have brought about reduced earnings, salary, or bonus to the limited partner. *Id.* at 873.

The Texas Supreme Court subsequently addressed *Hall's* analysis in *In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014). *Fisher* also involved a limited partner seeking to recover damages individually in connection with a failed business venture. 433 S.W.3d at 525–27. The defendants in *Fisher* relied upon *Hall* to assert that the plaintiff did not have standing to assert his claims. *Id.* at 527. The court acknowledged *Hall's* holding that "[a] limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest." *Id.* (quoting

*Hall*, 380 S.W.3d at 873). However, the court also noted that *Hall* recognized that "a partner who is 'personally aggrieved' may bring claims for those injuries he suffered directly." *Id.* (quoting *Hall*, 380 S.W.3d at 872).

The supreme court in *Fisher* used the "personally aggrieved" test to determine if the limited partner had standing. *Id.* at 527–28. The court concluded that the limited partner alleged injuries that were "personal to himself" and, thus, that he had standing to bring the claims. *Id.* The plaintiff/limited partner asserted that he made a $1 million payment to the limited partnership as a loan that the other limited partners did not make. *Id.* at 526–27. He additionally alleged that he suffered damages in the form of loss of earning capacity, lost profits, loss of income, damage to credit reputation, lost investments, mental anguish, and injury to his character. *Id.* at 527.

In *Hodges v. Rajpal*, the Dallas Court of Appeals revisited *Hall's* analysis in light of the supreme court's decision in *Fisher*, 459 S.W.3d 237, 249 (Tex. App.–Dallas 2015, no pet.). The court noted that the damages sought in *Fisher* were distinguishable from the damages sought by the plaintiffs in *Hall* and *Hodges* because the plaintiff in *Fisher* "alleged personal damages unique to him" rather than diminishing the assets and value of the limited partnership generally. *Id.* The court equated the alleged harm in *Fisher* as something that diminished the value of the limited partner's interest in the limited partnership exclusively. *Id.* The court concluded in *Hodges* that the plaintiffs did not have standing because they sought damages belonging to the limited partnership alone. *Id.*

The Fourteenth Court of Appeals recently addressed the standing of a limited partner to bring a claim individually in *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d

349, 360–62 (Tex. App.–Houston [14th Dist.] 2016, pet. filed). The court relied upon *Hall* and *Nauslar* in analyzing this issue. The court determined that the standing question is answered by determining whether the damages sought by the limited partner compensate him for injuries sustained by the partnership or by him individually. *Siddiqui*, 504 S.W.3d at 361 (citing *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 98–99 (Tex. App.–Houston [14th Dist.] 2014, no pet.)). While the Fourteenth Court of Appeals did not cite *Fisher*, its analysis comports with the supreme court's determination that a limited partner has standing to bring claims individually if he alleges injuries that are personal to himself. *See Fisher*, 433 S.W.3d at 527–28. Accordingly, we review Guerrero–McDonald's claims to determine if she alleged injuries to her individually, as opposed to injuries sustained by the limited partnership.

Guerrero–McDonald's second issue concerns her breach of contract claim. She premised her breach of contract claims in her fourth amended petition on the written partnership agreement for the limited partnership, as well as various ancillary agreements executed in connection with the partnership agreement. These other agreements consisted of the following: (1) a purchase and sale agreement wherein Guerrero–McDonald; 1701 Lavaca, LP; and 1701 Mortgagee, L.L.C. conveyed the property to Pike and Nassour, who then assigned the property to the limited partnership; (2) an agreement for consulting services wherein the limited partnership agreed to pay amounts to Guerrero–McDonald & Associates Inc. for consulting services; and (3) a promissory note wherein the limited partnership agreed to make a nonrecourse loan to Guerrero–McDonald. Under the terms of the purchase and sale agreement, Guerrero–McDonald was to receive a thirty-five percent ownership interest in the limited partnership. The purchase and sale agreement also specified that the purchaser would enter into a consulting agreement with Guerrero–McDonald providing for a monthly consulting fee of $15,000 per month being paid to her for eighteen months, that the purchaser would make a nonrecourse loan to Guerrero–McDonald for $1 million, and that Guerrero–McDonald would have a right to purchase a condominium unit at cost. Guerrero–McDonald primarily alleged that Appellees breached the partnership agreement by failing to either make additional capital contributions themselves or request additional capital contributions from others. She alleged that they did not make the request because that would have required them and Mattox to fund the request. Guerrero–McDonald also alleged that Appellees breached the partnership agreement by failing to pay her under the consulting agreement or loan her the money pursuant to the note.

Guerrero–McDonald's first issue concerns her breach of fiduciary duty claim. She alleged that Appellees breached a fiduciary duty they owed to her by failing to honor the consulting agreement and partnership note with her while at the same time receiving payments themselves from the project. She alleged that "[t]he damage related to such breach of duty is a damage specific to plaintiff and not the other partners." Guerrero–McDonald also alleged that Appellees breached their fiduciary duty by failing to make additional capital contributions and that only she was damaged because they benefited from not having to make additional contributions.

Guerrero–McDonald asserts on appeal that Appellees' contract violations and breaches of fiduciary duty affected her uniquely because of the special contract provision entitling her to loan advances of $1 million and because the contract was

structured so that her thirty-five percent interest could not be diluted if additional capital contributions were obtained. She also cites her loss of the consulting revenue, her contractual right to purchase a unit at cost, and the loss of opportunity to sell her interest to another party. In reliance upon these damage elements, Guerrero–McDonald asserts that she was "personally aggrieved" under *Fisher* and therefore has standing to assert her claims.

Appellees contend that *Fisher* is procedurally inapplicable because it was a mandamus proceeding wherein the relator was attempting to set aside the denial of its plea to jurisdiction. Appellees assert that the "standard of review was substantially more favorable to the plaintiff in *Fisher*." We disagree with Appellees' contention that *Fisher*'s analysis of standing is inapplicable because of the case's procedural posture. Standing is a matter involving subject-matter jurisdiction. *Linegar*, 495 S.W.3d at 279. The question of standing in this appeal focuses on the facts alleged in Guerrero–McDonald's pleadings rather than on any fact questions that needed to be determined by the factfinder. *Id.*; *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (noting the distinction between subject-matter jurisdiction questions that are determined by examining the facts alleged in pleadings versus those determined by analyzing disputed evidence of jurisdictional facts); *see also Sneed*, 465 S.W.3d at 186 (Standing is not "an issue that goes to the merits."); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (Jurisdictional questions should be decided without delving into the merits of the case.). *Fisher* is not procedurally distinguishable because it also involved an analysis of a limited part-

ner's pleadings to determine if he pleaded sufficient facts to show standing to assert claims individually.

Appellees also contend that *Fisher* is factually distinguishable because Guerrero–McDonald has not asserted claims for which she was personally aggrieved. Appellees assert that Guerrero–McDonald lacked standing to assert her claims because she failed to allege "a personal (versus derivative) injury." Appellees allege that Guerrero–McDonald's "entitlement to any further money from the LP was inextricably linked [to its] success." Appellees contend that Guerrero–McDonald's claims are derivative because she "cites to injuries suffered solely as a result of the LP's failure." In other words, Appellees are arguing that Guerrero–McDonald's claims are derivative of injuries suffered by the limited partnership because she would have been paid the amounts due under the contracts had the limited partnership been successful.

Appellees asserted at oral argument that Guerrero–McDonald's claims are analogous to the claims asserted in *Hodges*. Appellees' reliance on *Hodges* is understandable because it distinguished the holding in *Fisher*.[3] *See Hodges*, 459 S.W.3d at 249. We agree that the analysis in *Hodges* is significant for its consideration of *Fisher*. However, we conclude that Guerrero–McDonald has asserted some claims for damages that are unique to her and some claims that are derivative of losses sustained by the partnership generally.

The Dallas Court of Appeals noted in *Hodges* that all of the plaintiffs' claims related to the alleged misuse or mismanagement of the limited partnership's funds. *Id.* The court concluded that the alleged

**3.** We note that the Dallas Court of Appeals did not conclude in *Hodges* that *Fisher* was procedurally inapplicable because it was a mandamus proceeding.

harm was to the limited partnership alone because the alleged misuse or mismanagement of the limited partnership's funds would have the effect of diminishing the assets and value of the limited partnership generally rather than the plaintiffs' limited partnership interests exclusively. *Id.*

Similar to the claims in *Hodges*, Guerrero–McDonald's live pleading alleges many instances of misuse or mismanagement of the limited partnership's funds. For example, Guerrero–McDonald alleges that Pike received development fees in excess of the amount provided for by the contract. She also alleges that Pike misused the limited partnership's funds for his own benefit. Guerrero–McDonald specifically pleaded that various alleged breaches of contract "did not benefit the Limited Partnership" or constituted the "misuse [of] the funds of the Limited Partnership." We conclude that the matters alleged as breaches of contract in paragraphs 18(b), (c), (d), (e), and (g) constitute the alleged misuse or mismanagement of the limited partnership's funds and, as such, are claims of the limited partnership for which Guerrero–McDonald does not have standing to assert individually. *See Hodges*, 459 S.W.3d at 249 (Claims related to the misuse or mismanagement of the limited partnership's funds have the effect of diminishing the assets and value of the limited partnership generally rather than diminishing the value of a limited partner's interest exclusively.).

■■■ The remainder of Guerrero–McDonald's breach of contract claims allege different acts on the part of Appellees. These allegations are set out in paragraphs 18(a), (f), and (h) of Guerrero–McDonald's fourth amended petition. Guerrero–McDonald alleges in paragraph 18(a) that Appellees failed to either make additional capital contributions themselves or request additional capital contributions from others. She alleges in paragraph 18(h) that Appellees failed to invest sufficient capital to fund the project. Guerrero–McDonald asserts that these claims are matters that diminished the value of her interest uniquely. She bases this contention on the argument that she was the only limited partner whose ownership interest was protected from dilution if additional capital contributions were made to the project.

In presenting these claims, Guerrero–McDonald is essentially asserting that she lost her investment in the project because the project failed. While Guerrero–McDonald's contribution to the project was unique and her interest was protected from dilution, this is not a claim that is exclusive to her because the other limited partners also lost their investment in the project when the project failed. Thus, her allegations in paragraphs 18(a) and (h) are not damages that are unique to her under *Fisher* and *Hodges* because the alleged harm did not diminish the value of her interest in the limited partnership exclusively. *See Hodges*, 459 S.W.3d at 249; *Fisher*, 433 S.W.3d at 527–28. Accordingly, the trial court did not err in determining that Guerrero–McDonald did not have standing to assert the breach of contract claims asserted in paragraphs 18(a) and (h) of her fourth amended petition.

■■■ Guerrero–McDonald alleges in paragraph 18(f) that Appellees breached the partnership agreement by failing to pay her under the consulting agreement or loan her the money under the note she executed. Under *Fisher*, these claims are unique to Guerrero–McDonald because she was the only limited partner that had a consulting agreement [4] or loan agreement

---

4. Appellees present an additional contention with respect to the consulting agreement.

They summarily assert that Guerrero–McDonald does not have standing to assert a

with the partnership. *See Fisher*, 433 S.W.3d at 527–28. These claims involve matters that diminished the value of Guerrero–McDonald's interest in the limited partnership exclusively, rather than the value of the limited partnership generally. Accordingly, the trial court erred in determining that Guerrero–McDonald lacked standing to assert her breach of contract claims set out in paragraph 18(f) of her fourth amended petition.

We overrule Guerrero–McDonald's second issue to the extent that it challenges the trial court's determination that she lacked standing to assert the breach of contract claims alleged in paragraphs 18(a), (b), (c), (d), (e), (g), and (h) of her fourth amended petition. We sustain Guerrero–McDonald's second issue with respect to her breach of contract claims that are set out in paragraph 18(f) of her fourth amended petition.

 Guerrero–McDonald premised her breach of fiduciary duty claims on the same factual allegations set out in paragraphs 18(a) and 18(f) of her fourth amended petition. Specifically, the allegations in paragraph 19(a) are based upon the claims that Appellees failed to pay her under the consulting agreement or loan her the money under the note. We have previously determined that Guerrero–McDonald had standing to assert these claims. Guerrero–McDonald asserts in

paragraph 19(b) that Appellees breached a fiduciary duty owed to her by failing to either make or obtain additional capital contributions. We have determined that Guerrero–McDonald lacked standing to assert this claim because it relates to her lost investment in the project. This is a claim that did not diminish the value of her interest in the limited partnership exclusively because the other limited partners lost their investment in the project as well. Accordingly, we overrule Guerrero–McDonald's first issue to the extent that it challenges the trial court's determination that she lacked standing to assert the breach of fiduciary duty claim alleged in paragraph 19(b). We sustain Guerrero–McDonald's first issue with respect to her breach of fiduciary duty claim set out in paragraph 19(a) of her fourth amended petition.[5]

*Economic Loss Doctrine*

 In her third issue, McDonald–Guerrero challenges the trial court's order granting Appellees' motion for summary judgment on her negligent misrepresentation claim. The order specified that the trial court granted the motion "because the Court finds these claims are barred under the economic loss doctrine.

We note at the outset that the parties have a disagreement over the procedural aspects of the motion for summary judg-

breach of the consulting agreement because she was not a party to it. Under the terms of the consulting agreement that was ultimately executed, the payments were owed to Guerrero–McDonald & Associates, Inc. However, this contention is not an issue of standing. "[A] challenge to a party's privity of contract is a challenge to capacity, not standing." *Transcontinental Realty Inv'rs, Inc. v. Wicks*, 442 S.W.3d 676, 679 (Tex. App.–Dallas 2014, pet. denied). Whether a party is entitled to sue on a contract is not truly a standing issue because it does not affect the jurisdiction of the court. *Id.* Rather, it is a decision on the

merits. *Id.* Because the trial court determined that Guerrero–McDonald did not have standing to assert a claim based on the consulting agreement, it did not reach the issue of Guerrero–McDonald's capacity to assert a claim based on contractual privity.

5. Guerrero–McDonald's fourth amended petition also contains a paragraph 19(c) under her breach of fiduciary duty claim. However, it does not present a claim for relief. Instead, it alleges a basis for imposing a fiduciary duty upon Appellees.

ment on Guerrero–McDonald's negligent misrepresentation claim. Appellees stated in their summary judgment grounds that "Defendants are entitled to summary judgment on Plaintiff's negligent misrepresentation claim under the economic loss doctrine because there is no evidence of an independent injury." They asserted in the motion that Guerrero–McDonald "suffered no injury independent from her alleged breach of contract claims." Appellees contend that these allegations were sufficient to constitute a no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(i).

Guerrero–McDonald disagrees that Appellees sought a no-evidence summary judgment on her negligent misrepresentation claim. She asserts that Appellees' motion essentially sought a determination that she could only recover her out-of-pocket losses under her negligent misrepresentation claim. In other words, Guerrero–McDonald is asserting that Appellees motion for summary judgment only sought a determination that she could not recover her benefit-of-the-bargain damages in connection with her negligent misrepresentation claim. Based upon this assertion, Guerrero–McDonald contends that the summary judgment precluding her negligent misrepresentation claim was erroneous because it prohibited her from seeking out-of-pocket losses.

The economic loss rule encompasses multiple concepts addressing efforts to recover particular economic losses in particular situations. *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 834 (Tex. App.–Houston [14th Dist.] 2012, pet. denied) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414–15 (Tex. 2011)). Appellees cited an excerpt from *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797–98 (Tex. App.–Houston [1st Dist.] 2007, pet. denied), in the

motion for summary judgment as their basis for relief. This excerpt provided as follows:

> Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim. ... The burden is on the plaintiff claiming negligent misrepresentation to provide evidence of this independent injury. ... [I]f a negligent misrepresentation claim only seeks benefit of the bargain damages, instead of those damages permitted for negligent misrepresentation, (1) a plaintiff cannot establish an independent injury that is distinct from the economic losses recoverable under a breach of contract claim and (2) the economic loss rule bars any recovery of these damages under the negligent misrepresentation claim.

*Id.* The court in *Sterling Chemicals* cited *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998), as authority for this proposition. The parties do not dispute that this excerpt from *Sterling Chemicals* is a correct statement of the economic loss rule as it pertains to a claim for negligent misrepresentation between parties to a contract.

Guerrero–McDonald asserts that Appellees' motion for summary judgment was insufficient to constitute a no-evidence motion for summary judgment. We disagree. Rule 166a(i) provides, "After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Rule 166a(i) requires that no-evidence motions

for summary judgment "state the elements as to which there is no evidence." The comments to Rule 166a(i) state that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense" and that "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." TEX. R. CIV. P. 166a(i) cmt.

Appellees' motion for summary judgment stated that Guerrero–McDonald was essentially seeking benefit-of-the-bargain damages in her negligent misrepresentation claim. They concluded this portion of their motion with the following statement: "Because there is no evidence of any independent injury from these breach of contract damages, Defendants are entitled to summary judgment on Plaintiff's negligent misrepresentation claims." These statements were sufficient under Rule 166a(i) to present a claim that Guerrero–McDonald had no evidence of an independent injury (i.e., out-of-pocket damages) to permit a recovery on her negligent misrepresentation claim as required by *D.S.A.* and *Sterling Chemicals*.

██ To avoid summary judgment, Rule 166a(i) requires the responding party to produce summary judgment evidence raising a genuine issue of material fact. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The requirement is explained in the comment to the rule that provides as follows: "[T]he respondent is not required to marshal its proof; its response need only *point out* evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt. (emphasis added); *see Johnson*, 73 S.W.3d at 207. In her response to Appellees' motion for summary judgment, Guerrero–McDonald did not point out any evidence raising a genuine issue of materi-

al fact pertaining to an injury independent of her alleged breach of contract damages. Instead, she presented an argument that she was seeking damages "related to her investment in the Project" in connection with her negligent misrepresentation claim and these damages did not constitute benefit-of-the-bargain damages. However, she did not point out evidence that would support her claim of an independent injury.

On appeal, Guerrero–McDonald now cites portions of the voluminous summary judgment evidence that she contends establishes that she suffered an independent injury. However, Guerrero–McDonald did not point out any evidence in her response to the no-evidence motion for summary judgment as required by Rule 166a(i). In the absence of a sufficient response under Rule 166a(i), the trial court is not required to search the summary judgment evidence to find a fact issue to defeat a no-evidence motion for summary judgment. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.–Houston [14th Dist.] 2005, no pet.). The trial court did not err in granting Appellees' no-evidence motion for summary judgment on Guerrero–McDonald's negligent misrepresentation claim. We overrule Guerrero–McDonald's third issue.

### Appellees' Cross–Point

██ Appellees have presented a cross-point asserting six alternative grounds upon which the trial court could have granted summary judgment on Guerrero–McDonald's claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation.[6] Appellees presented these grounds in their motion for summary judgment. However, the trial court specifically granted the motion for summary judgment on the grounds that we have previously addressed. Irrespective of this

---

**6.** Of the six alternative grounds, three of them apply only to Nassour.

fact, Appellees urge this court to consider these alternative grounds as a basis for upholding the trial court's summary judgment.

We have previously cited the general rule that, when the trial court's summary judgment order specifies the grounds upon which it was granted, we limit our consideration to the grounds upon which it was granted. *Cates*, 927 S.W.2d at 625–26. However, we may consider, in the interest of judicial economy, other grounds that the trial court did not rule on if the summary judgment movant has preserved them for appellate review. *Id.*

We decline to consider Appellees' alternative summary judgment grounds. Our consideration of the alternative grounds would be contrary to our traditional role of reviewing decisions previously made by the trial court. Additionally, the alternative grounds raised by Appellees are merit-based inquiries focusing on the terms of the contracts and the relationships of the parties. The trial court's determination that Guerrero–McDonald lacked standing to assert her breach of contract and breach of fiduciary duty claims was not a merit-based determination. *Sneed*, 465 S.W.3d at 186 (Standing is not an issue "that goes to the merits."). Accordingly, we overrule Appellees' cross-point. In doing so, we note that Appellees will have the opportunity to present these contentions to the trial court on remand.

*Matters Considered at Trial*

After the entry of partial summary judgment in favor of Appellees, the case proceeded to trial on Guerrero–McDonald's fraud claims. The jury answered "no" to the liability questions in the trial court's charge. Specifically, the jury found that Appellees did not commit fraud either (1) by making a representation that funding of a construction loan was imminent or that Guerrero–McDonald would receive cash under the note or (2) in connection with the capital contributions of the limited partnership agreement. The jury did not address the matter of damages since that issue was conditionally submitted in the trial court's charge.

In her fourth issue, Guerrero–McDonald contends that the trial court erred when it deemed "admitted" a request for admission. She contends that the deemed admission "reached all the way to the merits at trial" by affecting the evidence that was presented. She contends that the sanction was not justified and that it was excessive.

Appellees propounded requests for admission on Guerrero–McDonald. Request for Admission No. 5 stated as follows: "Admit that 1701 Lavaca LP was insolvent in August 2008, i.e. that its debts exceeded its assets." Guerrero–McDonald responded to the request as follows:

> Plaintiff objects to this request as vague and ambiguous. Specifically, the use of the term "insolvent" and the undefined phrase "that its debts exceed its assets." Plaintiff objects because the request seeks a legal conclusion. Based upon the forgoing, plaintiff is unable to admit or deny the request.

On July 1, 2013, the trial court entered an order overruling Guerrero–McDonald's objections to the request for admission. The order also permitted Guerrero–McDonald to amend her response to the request for admission until July 18, 2013. When Guerrero–McDonald did not amend her response to the request for admission, Appellees filed a motion for sanctions and for deemed admissions. Appellees sought an order deeming the request for admission to be admitted.

At the hearing on the motion for sanctions, Guerrero–McDonald's attorney asserted that she did not amend her previous response to the request for admission after

the trial court overruled her objections to the request because the trial court's ruling did not change her answer. Counsel further asserted that Guerrero–McDonald was unable to admit or deny "insolvency" because she is not an accountant. The trial court clarified with counsel that, after the overruled objections were removed from consideration, Guerrero–McDonald's response to the request for admission was that "plaintiff is unable to admit or deny." The trial court ruled that the request of admission was deemed to be admitted "as worded."

Discovery sanctions are reviewed for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.' " *Id.* at 838–39 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *Id.* at 839. Any sanction imposed must be "just." TEX. R. CIV. P. 215.2(b). In evaluating whether sanctions are "just," we consider (1) whether a direct relationship exists between the offensive conduct and the sanction imposed and (2) whether the sanctions ordered are excessive. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

Rule 198.1 of the Texas Rules of Civil Procedure provides that a party may serve on another party "written requests that the other party admit the truth of any matter within the scope of discovery." TEX. R. CIV. P. 198.1. Rule 198.2 provides that the responding party must "admit or deny the request or explain in detail the reasons that the responding party cannot admit or deny the request." TEX. R. CIV. P. 198.2. The response "must fairly meet the substance of the request," and the responding party may qualify an answer, or deny a request in part, only when good faith requires. *Id.* The rule also sets out requirements for asserting lack of knowledge in response to a request and further provides that an assertion that the request presents an issue for trial is not a proper response. *Id.* Rule 215.4 provides that a party who has requested an admission under Rule 198 may move to determine the sufficiency of the answer. TEX. R. CIV. P. 215.4. If the court determines that the answer does not comply with the requirements of Rule 198, it may order either that the matter is admitted or that an amended answer be served. *Id.*

Guerrero–McDonald contends that the order deeming this request for admission as admitted was merit-preclusive. *See Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) ("[W]hen admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions."). Based upon this contention, Guerrero–McDonald asserts that the trial court erred by failing to consider a lesser sanction first. As drafted, this request for admission was not merit-preclusive because it did not address the validity of Guerrero–McDonald's claims or defenses but, rather, an element of her damages. *See id.* (citing *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996)). It was part of a set of seven requests for admission that addressed various financial matters pertaining to Guerrero–McDonald's damages.

The trial court's order deeming the request for admission as admitted addressed another discovery request where Appellees sought additional financial information from Guerrero–McDonald, including an in-

terrogatory seeking information about the outstanding debts for the project. At the discovery hearing, the trial court heard evidence that Guerrero–McDonald had responded to requests for production by referring Appellees to "70–plus" boxes of material containing over 50,000 pages of documents stored in a shed at her ranch and that the boxes contained documents having nothing to do with the lawsuit.

As noted previously, Guerrero–McDonald's initial response of being unable to answer the request for admission was prefaced on her objections to the request as being vague and ambiguous. She did not amend her response when these objections were overruled. At the hearing, Guerrero–McDonald's attorney asserted that she could not answer the request because she was not an accountant. However, Guerrero–McDonald never asserted this contention in her response to the request for admission as a reason for being unable to admit or deny the request as required by Rule 198.2(b).[7] Accordingly, we conclude that the trial court did not abuse its direction in deeming the request for admission to be admitted because of Guerrero–McDonald's evasive and incomplete answer. *See* TEX. R. CIV. P. 215.4(a). Moreover, the deemed request for admission addressed Guerrero–McDonald's damages, a matter that the jury did not reach. We overrule Guerrero–McDonald's fourth issue.

In her fifth issue, Guerrero–McDonald asserts that the take-nothing judgment on her fraud claim should be reversed based on *cumulative error*. She contends that the errors she has alleged in Issues One through Four prevented her from properly presenting her entire fraud case to the jury. Guerrero–McDonald asserts that there is a "deep connection between the claims wrongfully dismissed on summary judgment," the deemed admissions, and the fraud theory that was eventually tried and, thus, that the entire judgment should be reversed and remanded for a new trial. We disagree.

TEX. R. APP. P. 44.1(b) provides that, if error only affects part of the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. While the alleged breaches of contract and breaches of fiduciary duty likely involve many of the same facts that were litigated in the fraud action, they are different theories of liability with their own distinct elements. We conclude that a reversal on only one these theories does not require a reversal and remand of the fraud judgment. We overrule Guerrero–McDonald's fifth issue.

### *This Court's Ruling*

We reverse the trial court's order granting summary judgment on McDonald–Guerrero's breach of contract claim for the matter alleged in paragraph 18(f) of Guerrero–McDonald's fourth amended petition and on her breach of fiduciary duty claim for the matter alleged in paragraph 19(a), and we remand those matters to the trial court for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

---

7. Guerrero–McDonald cites *In re Young*, 410 S.W.3d 542, 549 (Tex. App.–Beaumont 2013, no pet.), for the proposition that requests for admission are an improper discovery tool for seeking discovery from experts. *Young* is procedurally distinguishable because the responding party objected to the requests for admission on the basis that they sought information possessed by experts.