**Opinion filed September 29, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00068-CV

_____

## THE CLIFFS PROPERTY OWNERS' ASSOCIATION, INC., Appellant

## V.

## R. MIKE WARD, RANDY GRACY, STACK BOWERS, FRED MOLSEN, DOUBLE DIAMOND, INC., AND DOUBLE DIAMOND UTILITIES, INC., Appellees

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C49308**

## MEMORANDUM OPINION

Appellant asks that we reverse, in part, and modify a final judgment in which the trial court granted Appellant's petition for a temporary and permanent injunction, but awarded one of the Appellees $138,203.50, plus attorneys' fees, for its suit on a sworn account. In its first issue, Appellant argues that the trial court lacked

jurisdiction to order that it pay damages because the receiving Appellee lacked standing. In its second issue, Appellant contends that the trial court's final judgment must be modified because it is internally ambiguous and inconsistent with the trial court's oral rulings in open court. For the following reasons, we affirm.

*Background*

Sometime between 1988 and 1993, Franklin Federal Bancorp. acquired a sizeable amount of real property adjoining Possum Kingdom Lake. In April 1993, Franklin contracted with the Brazos River Authority (BRA) for the right to withdraw water from the Lake (the 1993 contract). Franklin agreed to pay for 1,000 acre-feet of water every year until December 31, 2034, regardless of whether it actually withdrew the full amount of water in a given year. The 1993 contract prohibited Franklin from assigning its rights and obligations without the written consent of BRA. The 1993 contract also specifically granted Franklin an easement to build, operate, and maintain water diversion facilities in order to withdraw water from the Lake (the BRA Easement).

Six months later, Franklin sold the property, and assigned all of its rights and obligations under the 1993 contract, to Double Diamond, Inc. (DDI). In January 2016, DDI entered into a second water-withdrawal contract with BRA to purchase an additional 227 acre-feet of water per calendar year, again regardless of whether it actually withdraws the full amount of water from the Lake in a given year (the 2016 contract). The 2016 contract specifically identifies DDI as the purchaser. The 2016 contract also specifically states that DDI may only assign its rights and obligations with the written consent of BRA. There is no documentation in the record of written consent from BRA for any assignment by DDI of its rights and obligations under either the 1993 or 2016 contracts.

In January 1994, shortly after acquiring the property, DDI created the legal entity that is the Appellant in this matter: The Cliffs Property Owners' Association,

2

Inc. (POA). One of the stated purposes behind POA's creation was to maintain the recreational facilities on the property. Under POA's articles of incorporation and bylaws—as well as DDI's declaration as to the creation of POA—"recreational facilities" is defined as "all swimming pools, tennis courts, *golf courses*, club houses, recreational centers and other similar recreational facilities constructed from time to time within the Property" (emphasis added). In short, POA is obligated to maintain the golf courses on the property by, among other things, adequately watering them.

According to Appellees, DDI created and assigned all of its rights and obligations under the 1993 and 2016 contracts to Double Diamond Utilities, Inc. (DDU Inc.). There is no documentation of such assignments in the record. Nor does the record include any articles of incorporation for DDU Inc., though it does contain articles of incorporation for Double Diamond Utilities, *Co.* (DDU Co.). DDU Inc. claims that it entered into an agreement with POA, whereby POA agreed—pursuant to its obligation to maintain the golf course and swimming pools on the property— to pay DDU Inc. for half of the water that DDU Inc. purchases from BRA and half of the electricity required to operate the water diversion facilities. This alleged agreement was never reduced to a written contract. However, POA made several recorded payments to "Double Diamond Utilities" (DDU) for water usage. And DDU sent numerous invoices to POA for unpaid irrigation water and electricity bills. The record also contains invoices for potable water delivered to POA, which was used to maintain two swimming pools on the property. These potable water invoices specifically state that the payments, though instructed to be made out to DDU, would be remitted to DDU *Inc.*

According to DDU Inc., for more than twenty years—from the inception of its agreement with POA until mid-2019—POA consistently paid DDU Inc. for half of the water purchased from BRA (which POA used to irrigate the golf course), for half of the electricity used to withdraw the water, and for the specific amount of

3

potable water POA used for the swimming pools it maintained. Indeed, the invoices from DDU Inc. to POA in the record indicate that, by and large, POA stopped making payments on May 7, 2019. Over the course of a year beginning in May 2019, POA made two irrigation water payments: one in December 2019 and the other in January 2020. No payments were made during that same one-year period for the electricity used to withdraw the water that DDU Inc. delivered to POA.

In January 2020, DDU Inc. responded by placing a lock on the gates to the pump station and storage tank (the water storage facility), obstructing POA's access to the water needed to irrigate the golf course. Shortly thereafter, POA sought a temporary restraining order (TRO), and temporary and permanent injunctions, to require DDU Inc. to remove the locks from the gates around the water storage facility and to enjoin DDU Inc. from taking any further steps to obstruct POA's ability to access the water from that facility. In its petition, POA specifically named DDU *Inc.*, not DDU *Co.*, as a defendant. The trial court granted POA's request for a TRO and set a hearing for POA's temporary and permanent injunction claims. DDU Inc. then counterclaimed against POA for breach of contract and suit on a sworn account, seeking actual damages in the amount of $133,811.94 for unpaid invoices from May 2019 through June 2020. DDU Inc. filed its counterclaims under the same name used by POA in its petition—DDU *Inc.*, rather than DDU *Co.*

In support of its suit on a sworn account counterclaim, DDU Inc. alleged that it kept a systematic record of open utility accounts for electricity and water with POA and that, after calculating all lawful offsets, payments, and credits, POA owed $133,811.94 as of June 2020. Attached to the counterclaim was the sworn affidavit of Christie Rotramel, the custodian of records for DDU Inc. Rotramel swore and affirmed that she had read the factual allegations in DDU Inc.'s suit on a sworn account, that those allegations were within her personal knowledge, and that they

4

were true and correct. POA never filed a sworn, written denial of DDU Inc.'s suit on sworn account.[1]

At a pretrial hearing in August 2020, POA and DDU Inc. stipulated that DDU Inc. owns the water system that enables POA to access water from the lake to irrigate the golf course and fill its swimming pools. During the stipulation discussions, the parties referred to DDU Inc. at times as "DDU," "Double Diamond Utilities," "Double Diamond," and "Double Diamond Utilities Company." DDU Inc. and POA also stipulated that DDU Inc. and DDI are distinct legal entities and that POA is obligated to maintain the golf course.

At trial, the trial court found that DDU Inc.'s suit on sworn account was properly verified by Rotramel. POA could provide no reason for failing to submit a sworn, written denial of DDU Inc.'s counterclaim, *see* TEX. R. CIV. P. 93, 185, other than overlooking the sworn affidavit of Rotramel, which was attached as Exhibit O to the counterclaim. The trial court granted POA's request for injunctive relief, ordering that DDU Inc. "shall be enjoined from shutting down, locking up, or turning off the Water System, which provides raw water to [POA] in order to irrigate the golf course." The trial court also found in favor of DDU Inc.'s suit on a sworn account counterclaim and ordered that POA pay $138,203.50 in "past-due amounts."

The trial court's final judgment was entered on January 27, 2021. POA filed a timely motion for new trial on February 26, 2021, arguing solely that it was entitled to a new trial on the basis of newly discovered evidence and that DDU Inc. fabricated evidence. *See* TEX. R. CIV. P. 329b(a). POA then filed an untimely supplement to its motion for new trial, on April 1, 2021, arguing for the first time that DDU Inc. lacked standing to bring its sworn account counterclaim. *See id.* at 329b(b) ("One or more amended motions for new trial may be filed . . . within thirty days after the

___

[1]POA also failed to submit even a general denial of any of DDU Inc.'s counterclaims.

judgment or other order complained of is signed."); *Equinox Enter., Inc. v. Assoc. Media, Inc.*, 730 S.W.2d 872, 875 (Tex. App.—Dallas 1987, no writ) (holding that Rule 329b(b) applies to supplemental motions for new trial). The trial court denied POA's original motion for new trial less than a week later, on April 7, 2021. The trial court did not rule on POA's supplemental motion.

*Discussion*

I. *Subject-Matter Jurisdiction*

In its first issue on appeal, POA argues that DDU Inc. lacks standing and, thus, that the trial court lacked subject-matter jurisdiction to enter its judgment awarding damages to DDU Inc. on its suit on a sworn account counterclaim. POA advances this argument on two fronts. First, POA claims that DDU Inc. lacked standing to bring its counterclaim because it was incorporated using the corporate designator "Co.," not "Inc.," and thus the name under which it counterclaimed against POA denoted a nonexistent legal entity. *See, e.g.*, *Smith v. CDI Rental Equip., Ltd.*, 310 S.W.3d 559, 566 (Tex. App.—Tyler 2010, no pet.) (stating that "[c]ivil suits may be maintained only by or against parties having an actual or legal existence"). Second, POA claims that DDU Inc. lacked standing to bring its counterclaim because DDU Inc. was not a party to any contract with either POA or BRA. *See id.* (stating that "only the parties to a contract have the right to complain of a breach thereof"). For the following reasons, we disagree with POA on both fronts and overrule its first issue on appeal.

A. *Standard of Review*

We review questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "This is because standing is a component of subject matter jurisdiction." *Id.* (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005)). "Without standing, a court lacks subject matter jurisdiction to hear the case." *Lovato*, 171 S.W.3d at 849. Standing is a question of

6

law, although facts necessary to answering that question may need to be determined by the factfinder. *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016). To have standing, a plaintiff must plead facts demonstrating it suffered an injury that is "concrete and particularized, actual or imminent." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)). "In applying a de novo standard of review to a standing determination, reviewing courts 'construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties.'" *Farmers Tex. Cnty. Mut. Ins. Co.*, 598 S.W.3d at 240 (quoting *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018)). The injury must be fairly traceable to the defendant's conduct and must be redressable by the plaintiff's requested relief. *Heckman*, 369 S.W.3d at 154–55. "The standing inquiry 'requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Id.* at 156 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "[T]he mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing." *Farmers Tex. Cnty. Mut. Ins. Co.*, 598 S.W.3d at 241 (citing *Inman*, 252 S.W.3d at 305).

B. *Analysis*

*1. Standing*—It is clear from the record before us that DDU Inc. has standing. DDU Inc. alleged that it entered into an agreement with POA whereby POA agreed to pay DDU Inc. for half of the water that it purchased from BRA and half of the electricity that was necessary to operate the water diversion facilities to withdraw the water from the lake and bring it to the property. DDU Inc. alleged that, until May 2019, it routinely sent invoices to POA pursuant to this arrangement and that POA routinely made the agreed-upon payments. DDU Inc. attached over sixty pages of unpaid invoices to its counterclaim—invoices that DDU Inc. had sent to POA over the course of a year for utility services provided. DDU Inc. also attached

an e-mail from POA to DDU Inc., dated February 19, 2020, in which POA disclaimed any intent to continue paying DDU Inc. for its water services because POA had executed its own contract with BRA for irrigation water for the year 2020. And DDU Inc. attached the sworn affidavit of Christie Rotramel, its custodian of records.  In it, Rotramel affirmed that each factual allegation in DDU Inc.'s counterclaim was within her personal knowledge and that they were each true and correct.  In short, DDU Inc. pleaded facts that demonstrated that it suffered a concrete and particularized injury traceable to POA's failure to continue making payments for services rendered.  And this injury is readily redressable by an award of actual damages in the amount of the overdue invoices, which is precisely what DDU Inc. sought and received.  Accordingly, DDU Inc. had standing to bring its suit on sworn account as a counterclaim, and the trial court had jurisdiction to award the relief that DDU Inc. requested.

*2. Assumed Name*—POA's argument that DDU Inc. lacked standing because it used the name "DDU Inc." rather than "DDU Co." misses the mark.  DDU Inc. has sufficiently demonstrated that it suffered a concrete injury traceable to POA's conduct and that a favorable award of damages would redress that harm.  That is sufficient for standing.  In any event, the record demonstrates that "DDU Inc.," just like "DDU," is an *assumed* name of DDU Co.

> Any . . . private corporation . . . doing business under an assumed name may sue or be sued in its . . . assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.

TEX. R. CIV. P. 28.  Rule 28 is "predicated on the notion that a case has already commenced against the proper party, but the party's legal name is incorrect." *Molinet v. Kimbrell*, 356 S.W.3d 407, 412 (Tex. 2011).  That is precisely what occurred here.

In a *prior* dispute between these parties—which was also appealed to this court—POA sued DDU Inc. under its legally correct name: "DDU Co." *See Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784 (Tex. App.—Eastland 2021, no pet.). The trial judge in this case, who also presided over the dispute in *Dipprey*, acknowledged that POA and DDU Inc. were also opposing parties in the former suit. Furthermore, the trial court asked that the parties stipulate as to matters that had already been litigated in *Dipprey*, and POA complied by stipulating that DDU Inc. owns the water diversion facilities. Additionally, the invoices to POA for water and electricity suggest that DDU Co. did business with POA using the assumed names DDU and DDU Inc. *See KM-Timbercreek, LLC v. Harris Cnty. Appraisal Dist.*, 312 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (conditioning availability of Rule 28 on a showing by the named entity that it actually does business under that name), *superseded by statute on other grounds as stated in Town & Country Suites, L.C. v. Harris Cnty. Appraisal Dist.*, 461 S.W.3d 208 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In any event, whether an entity does business under an assumed or common name is a question of fact for the trial court to determine. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). The trial court in this case did not make any findings of fact, so we must presume it made all the necessary findings to support the judgment. *Ryan v. Abdel-Salam*, 39 S.W.3d 332, 334 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). For all of these reasons, we may not ignore the trial court's implied necessary finding that "DDU Inc." is an assumed name under which DDU Co. conducts its business and under which it did, in fact, conduct its business with POA.

*3. Capacity*—POA insists that "DDU Inc." is not an assumed name used by DDU Co. because DDU Co. never registered the name "DDU Inc." by filing an assumed name certificate. *See* TEX. BUS. & COM. CODE ANN. § 71.101 (West Supp. 2021). POA stresses that, under the Business and Commerce Code, if a corporation

does not file an assumed name certificate, it "may not maintain . . . an action or proceeding arising out of a contract . . . in which an assumed name was used." *Id.* § 71.201(a) (West 2015). Whether DDU Inc. filed an assumed name certificate is immaterial here. The issue POA raises on appeal is that DDU Inc. lacks *standing*— the failure to file an assumed name certificate would only affect DDU Inc.'s *capacity* to sue. *See Sixth RMA Partners, L.P.*, 111 S.W.3d at 55–56 (holding that the "failure to file an assumed name certificate does not render a plaintiff's claim void" but does "affect[] a plaintiff's capacity to bring suit").

Capacity and standing are distinct concepts. "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Crucially, "[a]n argument that an opposing party does not have the capacity to participate in a suit can be waived by a party's failure to properly raise the issue in the trial court." *Sixth RMA Partners, L.P.*, 111 S.W.3d at 56 (citing *Nootsie*, 925 S.W.2d at 662). Here, POA never raised or presented to the trial court—in any pleading or motion—DDU Inc.'s failure to file an assumed name certificate. Therefore, POA waived any complaint as to DDU Inc.'s capacity to sue. As such, any failure on DDU Inc.'s part to file an assumed name certificate has no bearing on the issue of standing.

*4. Suit on a Sworn Account*—POA's second argument against standing—that DDU Inc. was never a party to any contract with POA or BRA—also misses the mark because it only relates to the merits of DDU Inc.'s suit on a sworn account counterclaim, not DDU Inc.'s standing. We have already determined DDU Inc.'s standing insofar as it alleged a concrete injury traceable to POA's conduct and redressable by an award of damages. But even setting aside the fact that POA's argument does not actually relate to standing, it further fails because POA waived

any dispute it may have had with DDU Inc.'s counterclaim through inaction in the trial court.

DDU Inc.'s counterclaim falls under Rule 185 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 185. Rule 185 provides that, when a claim is based on an open account "on which a systematic record has been kept," the account "shall be taken as prima facie evidence" of the claim if it is supported by affidavit. *Id.*; *Copeland v. A-Town/Hi-Tech, L.P.*, No. 11-18-00154-CV, 2020 WL 3287149, at *2 (Tex. App.—Eastland June 18, 2020, no pet.) (mem. op.). The affidavit supporting the claim must be made by the party, his agent, or his attorney, and must be "to the effect that such claim is, within the knowledge of [the] affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed." TEX. R. CIV. P. 185. Unless the opposing party files a sworn, written denial of the claim, a plaintiff who satisfies these requirements is entitled to summary disposition of the case without the need to formally introduce the account as evidence of the debt. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 833 (Tex. App.—Dallas 2014, no pet.); *S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 354 (Tex. App.—Houston [14th Dist.] 2013, no pet.). If the opposing party fails to file a written denial under oath, he "may not dispute the receipt of the items or services, or the correctness of the stated charges." *Vance v. Holloway*, 689 S.W.2d 403, 404 (Tex. 1985) (quoting *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979)); *see also* TEX. R. CIV. P. 93(10), 185.

As we have explained, DDU Inc. suffered a concrete injury traceable to POA's conduct. DDU Inc. has also satisfied all the requirements of Rule 185 in asserting its counterclaim. Accordingly, DDU Inc. was entitled to a summary disposition on its suit on sworn account unless POA filed a sworn, written denial. It did not. POA did not even file a general denial, much less a sworn, written denial as demanded by the rule. When asked why, POA responded that it was unaware that DDU Inc.'s suit

11

on sworn account had been verified. In other words, POA overlooked Rotramel's affidavit, which was attached to DDU Inc.'s counterclaim as Exhibit O. Even assuming the veracity of POA's excuse, it makes no difference. POA did not file a sworn, written denial of DDU Inc.'s counterclaim and, pursuant to Rule 185, waived any right to dispute that claim now on appeal. *See* TEX. R. CIV. P. 185; *see also id.* R. 93.

Because DDU Inc. had standing to bring its suit on sworn account—and because each of POA's arguments to the contrary are meritless—we overrule POA's first issue.

II. *No Inconsistency Between the Trial Court's Rulings and the Judgment*

In its second issue, POA requests that we modify the final judgment, or remand this case to the trial court to do so, because of a perceived inconsistency between the trial court's oral rulings in open court and its final judgment. We overrule POA's second issue because there is no inconsistency.

In its suit on a sworn account counterclaim, DDU Inc. also sought declaratory relief. DDU Inc. submitted proposed findings of fact and conclusions of law, which included the declaration that POA "has no rights *in or to the BRA Easement* and thus has no authority *under the BRA Easement* to access, maintain[,] or operate" the water diversion facilities (emphasis added).

At the conclusion of trial, the trial court made several oral rulings. The trial court pronounced that POA has a right of use that is "necessarily implied [by its] duty to maintain the [recreational] facilities [i.e., to adequately water the golf course]." Thus, the trial court enjoined DDU Inc., stating that POA "can't be locked out of the pump house or wherever it was that they were allegedly locked out of." However, the trial court also granted DDU Inc.'s aforementioned proposed declaration, explaining that it was doing so because POA "[does not] have any authority *under the BRA easement*" (emphasis added).

12

In its final judgment, the trial court ordered that "DDU shall be enjoined from shutting down, locking up, or turning off the Water System, which provides raw water to [POA] in order to irrigate the golf course." The trial court further ordered that POA "has no rights *in or to the BRA Easement* and thus has no authority *under the BRA Easement* to access, maintain[,] or operate" the water diversion facilities (emphasis added).

We find no ambiguities in the findings recited in the trial court's final judgment, nor between those findings and the trial court's oral rulings at the conclusion of trial. The trial court enjoined DDU Inc. from taking any actions to prevent POA from accessing the water that it needs to irrigate the golf course. The declaratory relief that the trial court granted to DDU Inc. is not inconsistent with that injunction. It merely states that the *source* of POA's right to use the water system is *not* the BRA Easement. POA has a right to use the raw water diverted from the lake by DDU Inc.'s water diversion facilities because it has an independent duty to irrigate the golf course—not because it has any rights or authority arising out of the BRA Easement. Accordingly, we overrule POA's second issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

September 29, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

13