MCN ENERGY V. OMAGRO/CROSS APPEAL

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-015-CV

MCN ENERGY ENTERPRISES, INC. APPELLANT

FORMERLY NAMED MCN AND APPELLEE

INVESTMENT CORPORATION 

V.

OMAGRO DE COLOMBIA, L.D.C. APPELLEE

AND APPELLANT

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant MCN Energy Enterprises, Inc. (MCN) asks that we reverse the jury’s verdict and trial court judgment awarding Appellee Omagro De Colombia, L.D.C. (Omagro) $2,781,041.36 for a claim of negligent misrepresentation and that we render judgment that Omagro take nothing.  We will affirm.

The Agreement

Omagro is a company controlled by petroleum engineer Naresh Vashisht.  Omagro produces urea, a nitrogen fertilizer used for plants and crops.  In 1996, Vashisht decided to operate a urea plant that he bought in Peru.  He soon moved the plant to Colombia.  Unable to find adequate bank financing, he approached MCN’s president, Rai Bhargava, and asked him to buy an interest in Omagro as an international investment.  Eventually, MCN and Omagro signed a memorandum of understanding in which the two companies agreed they would associate for the purpose of owning and operating the urea plant.  

Each party agreed to deal with the other in good faith.  The memorandum stated the companies’ agreement that as long as MCN was negotiating in good faith, Omagro would share with MCN information to use in making joint decisions about the project and would not solicit or encourage proposals from others.  The parties further agreed that within thirty days the companies would sign “definitive documents,” consisting of a stock purchase agreement and documents concerning financing, plant construction and operation, and the distribution of the plant’s profits.  The memorandum also stated that within thirty days after the definitive documents were signed, MCN would reimburse Omagro for a percentage of the verifiable development costs Omagro incurred 

before those documents were signed.  Finally, the memorandum provided that MCN would conduct a due diligence review within the first thirty days after signing the memorandum and would have no obligation to consummate the deal unless satisfied with that review.  The memorandum was signed July 14, 1997, and eventually it was amended and extended six times.  The final extension of the memorandum was dated March 16, 1998, extending the date for signing the definitive documents until April 15, 1998.  In the summer of 1998, MCN’s president, Bhargava, was replaced by Joe Williams.

Due Diligence Efforts

In 1997, after the memorandum was signed, George Robles, MCN’s “point man” for the transaction, and Purna Pai, an MCN chemical engineer, visited Colombia to conduct due diligence for the urea project.  When they returned after inspecting the plant, they gave Omagro no indication that MCN would not be interested in it.  To the contrary, when they came home from Colombia, Robles, Pai, and Shanti Sharma (the man in charge of MCN’s international investments) told Omagro the plant looked fine to them.  In August 1997, MCN asked for a thirty-day extension within which to sign the definitive documents.  The request was granted by a sixty-day extension letter the two companies signed, that also extended the thirty-day period for MCN to conduct its due diligence.  

Omagro continued to pursue the project, obtaining a “mandate agreement” signed by International Finance Corporation, MCN, and Omagro to proceed with the financing of the project.  Omagro then spent money to conduct soil studies, design electrical systems, do engineering work, and to continue repairing and cleaning the plant’s equipment.  Because MCN and Omagro decided to transform the plant into a “granular” operation, costs again increased, and Omagro bought more equipment in the United States, storing it in Houston.  That equipment was inspected by MCN’s Robles and Pai, who once again indicated that MCN was committed to the project.  Meanwhile, Omagro sent a memo to MCN containing Omagro’s analysis of the bids received for constructing and operating the plant and identifying the party Omagro wished to hire for that purpose.  Robles reacted by calling Omagro to agree with the hiring recommendation.  Also, Omagro sent MCN a copy of a proposed gas contract with Ecopetrol, to which MCN made no objection.

MCN Withdraws

Without warning, fourteen months into the transaction, Robles and Sharma telephoned Vashisht in September 1998 to tell him that MCN would not invest in the project with Omagro.  Vashisht then wrote a letter to MCN’s new president, Williams, to protest MCN’s sudden withdrawal.  MCN responded to 

Omagro with a letter dated November 10, 1998, stating that MCN would not invest in the operation of Omagro’s urea plant because MCN believed the memorandum of understanding had “expired.”  The September telephone call and November letter were the first times MCN expressed any concerns or reservations to Omagro about the Colombia urea plant. 

Omagro Sues MCN

In September 1999, Omagro sued MCN alleging causes of action for breach of contract, promissory estoppel, breach of good faith and fair dealing, fraud, and negligent misrepresentation.  At trial, the jury heard evidence that from April 1997 until September 1998, MCN personnel negligently misrepresented to Omagro, through words and conduct, that MCN was committed to making an investment in the construction and operation of the urea plant, and that Omagro relied to its detriment on the negligent misrepresentations of MCN’s words and conduct.  

From the evidence, the jury answered “yes” to question 3 of the charge,  which asked whether MCN made a negligent misrepresentation on which Omagro justifiably relied.  Question 3 defined “misrepresentation” as “any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.” 

The question instructed jurors that a “negligent misrepresentation” occurs when a party, acting either in the course of his business, or in a transaction in which he has a pecuniary interest, makes a representation that supplies false information to guide others in their business, and without exercising reasonable care or competence in obtaining or communicating the represented information.

On direct examination, Robles conceded that, despite his favorable comments to Omagro, he had determined in 1998 that the urea project would not get done. On cross-examination, Robles agreed that “from the very beginning,” he did not believe it would fit MCN.  Moreover, Robles conceded that he felt he could not be honest with Omagro because it might hurt his own employment at MCN.  Pai testified that soon after his first visit to the plant in Colombia, he concluded that the project was not technically feasible.  Pai did not tell that to Omagro.  Pai also admitted that when he went to Houston in January 1998 to inspect equipment Omagro had bought to transform the plant to a “granular” plant, he concluded the equipment was substandard, but he did not report that to Omagro.  Pai conceded that he knew Omagro was continuing to spend a lot of money on the project.  Pai also admitted that the MCN people with whom Omagro was talking should have been informed that Pai had made two negative reports to MCN about the project.  In answer to question 4, the 

jury found that for the damages proximately caused by MCN’s negligent misrepresentations, Omagro is entitled to recover $2.2 million, as fair and reasonable compensation to reimburse it for expenses it incurred in connection with the urea plant project.  The trial court signed a final judgment for Omagro for $2.2 million, plus $581,041.36 in prejudgment interest.

MCN’s Appeal

MCN presents five issues on appeal.  The first complains that Omagro  relied on the same evidence to prove its three theories of liability against MCN: breach of contract; fraud; and negligent misrepresentation.  MCN asserts that because the jury found MCN neither breached the contract, nor committed  fraud related to it, the jury had no reasonable basis for finding that Omagro independently proved a compensable injury for negligent misrepresentation in the transaction.  MCN’s second issue contends Omagro presented both legally and factually insufficient evidence of the essential elements of negligent misrepresentation.  Omagro counters the second issue by arguing that MCN has failed to preserve a factual sufficiency complaint because MCN failed to file a motion for new trial after the jury verdict.  Because MCN concedes in its reply brief that its claim of factual insufficiency is waived, that portion of the second issue is moot.  We will address the first and the remainder of the second issues together.          

With regard to MCN’s legal sufficiency challenge, we are required to consider all of the evidence in the light most favorable to Omagro, the party for whom the verdict has been rendered, and to indulge every reasonable inference from that evidence in Omagro’s favor.  
See
 
Merrell Dow Pharms., Inc. v. Havner
, 953 S.W.2d 706, 711 (Tex. 1997).  Our review must be based on the actual wording of the question and instructions submitted to the jury.  
Wal-Mart Stores, Inc. v. Sturges
, 52 S.W.3d 711, 715 n.5 (Tex. 2001).  MCN complains about jury question 3, arguing MCN cannot be considered liable for negligent misrepresentation without evidence of an “affirmative” misrepresentation it made to Omagro.  However, MCN’s complaint is contrary to the wording of the jury charge.  The jury’s instruction in question 3 does not mention the word “affirmative.”  Instead, it defines only a “misrepresentation“ as “any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.” MCN’s appeal does not complain of the word “misrepresentation,” and the jury charge does not limit the definition to only “affirmative” misrepresentations.  When, as here, no objection was made to a jury instruction, evidence to support a finding based on the instruction should be assessed in light of the instruction the trial court gave the jury.  
City of Fort Worth v. Zimlich
, 29 S.W.3d 62, 71 (Tex. 2000).

Legally sufficient evidence exists to show that the words and conduct of MCN’s point man, Robles, and its petroleum engineer, Pai, were misrepresentations of the type defined in jury question 3.  Their words and conduct, along with that of Sharma, repeatedly spurred Omagro to expend more money by making Omagro believe MCN would be joining Omagro in the operation of the urea plant.  The specific words and conduct of the negligent misrepresentations have been stated above and will not be repeated.  Suffice it to say that evidence of the negligent misrepresentations made by Robles, Pai, and Sharma establishes conclusively that they were made on behalf of MCN in the course of its business and in connection with the transaction in which MCN had a pecuniary interest—but were not in accord with the true facts and were false when made to Omagro.  MCN never attempted to correct the false or misleading statements.  When one makes a representation to another that later becomes misleading or false, he has a duty to correct the false information to the misled party and not continue to conceal the truth.  
Anderson, Greenwood & Co. v. Martin
, 44 S.W.3d 200, 212-13 (Tex. App.—Houston [14
th
 Dist.] 2001, pet. denied).  Both negligence and causation may be established by either circumstantial or direct evidence.  
Birmingham v. Gulf Oil Corp.
, 
516 S.W.2d 914, 917 (Tex. 1974) (op. on reh’g).  

The evidence of the words and conduct of MCN’s personnel, done over a period of fourteen months while Omagro was expending millions of dollars for the joint benefit of MCN and Omagro, is legally sufficient to have proven to a reasonable jury that MCN did not exercise reasonable care or competence and, indeed, that MCN worked to hide the truth from Omagro, until after September 1998.  A reasonable jury was able to conclude that no reasonably prudent person would have acted as MCN acted. The evidence also is legally sufficient to demonstrate to a reasonable jury that Omagro relied on MCN’s negligent representations.  Vashisht testified that if he had been told the truth as soon as it became apparent to MCN’s personnel, Omagro could and would have found another investor partner.  Pai testified that he knew Omagro was spending more money on the project and, for that reason, conceded MCN should have told Omagro the truth early in the transaction. We overrule MCN’s first and second issues.

MCN’s third issue asserts that because the jury awarded Omagro damages that equal the benefit of the bargain, Omagro erroneously is placed in the same position it would have enjoyed if MCN had signed the definitive documents.  MCN insists that in this case, Omagro is controlled by a contract/tort principle that prevents any plaintiff from recovering breach of contract damages for liability under a tort theory.  
See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.
, 973 S.W.2d 662 (Tex. 1998).  

To apply the contract/tort principle here, the parties first must have an agreement, the breach of which will create identifiable “benefit of the bargain” damages.  
Id
. at 663.  Nevertheless, MCN also relies on the jury’s answer to question 1, that there never was a binding and enforceable agreement obligating it to execute definitive documents, or otherwise continue with the project, or to reimburse forty percent of Omagro’s development costs.  Yet, when jury question 1 asked whether MCN failed to comply with the terms of the memorandum of understanding, the jury answered “no.”  And by answering “no” to question 1, the jury accepted MCN’s theory, that no agreement legally obligated MCN to execute definitive documents or reimburse forty percent of Omagro’s development costs.  Thus, the jury found that the so-called “benefit of the bargain,” an alleged obligation to pay Omagro forty percent of its costs, was not available to Omagro in its action for breach of contract.

For a long time, the Texas Supreme Court has held that obligations and duties separately imposed by contract and by tort may co-exist.  
See Formosa Plastics Corp. USA v. Presidio Eng’rs. & Contractors, Inc.,
 960 S.W.2d 41, 44 (Tex. 1998); 
Jim Walter Homes, Inc. v. Reed,
 711 S.W.2d 617, 618 (Tex. 1986);
 Int’l Printing Pressmen & Assistants’ Union v. Smith, 
198 S.W.2d 729, 735-36 (Tex. 1946)
.  And these cases are not altered by 
D.S.A., Inc.
 973 S.W.2d at 663 (stating that the court was not deciding whether a party breached a legal duty independent of its contractual duty).  We hold here MCN had a tort duty not to make negligent misrepresentations, and we decline to apply contract/tort principles in this case.  Even without the memorandum of understanding, MCN had a duty not to negligently misrepresent that it was committed to a business deal when it was not.
  Shell Oil Prods. Co. v. Main St. Ventures, L.L.C.
, 90 S.W.3d 375, 382 (Tex. App.—Dallas 2002, pet. denied).

The damages of $2.2 million found by the jury’s answer to question 4 are not limited to reimbursing forty percent of Omagro’s development costs. Instead, question 4 allowed the jury to award 
any
 damages proximately caused by MCN’s negligent misrepresentation, 
including
 reimbursement of Omagro’s expenses incurred in connection with the project.  That includes the sixty percent of Omagro’s costs MCN had no obligation, except from breaching its tort duty, to reimburse.  MCN failed to object to the wording of the instruction about the measure of damages or submit its own instruction specifically limiting the jury to consideration of only MCN’s contractual share of development costs.  The evidence in the record clearly supports the conclusion that the jury’s award of damages from MCN’s misrepresentations is for an independent tort injury.  Here, the undisputed evidence shows that Omagro spent $3.6 million of development costs in reliance on MCN’s negligent misrepresentations.  A jury may award damages anywhere within the trial court’s range of the presented evidence.  
Clary Corp. v. Smith
, 949 S.W.2d 452, 467 (Tex. App.—Fort Worth 1997, pet. denied).  The jury therefore had before it sufficient evidence to support its $2.2 million verdict.  We overrule the third issue.

The fourth issue contends that the trial court denied MCN the right to provide the jury with evidence of one of its “most important reasons” for withdrawing from the transaction. MCN suspected from evidence it gained outside the jury’s presence that Omagro had paid a bribe to the wife of a Colombian government official, not disclosing it in violation of the Foreign Corrupt Practices Act.  15 U.S.C.A. §§ 78dd-1—78dd-2 (West 1998).  In connection with its fourth issue, MCN argues that if the jury had only known about the alleged bribe, Omagro’s negligent misrepresentation claim would have been defeated.  Initially, we note that the evidence shows that MCN’s November 10, 1998 letter to Omagro does not mention the alleged “bribe” as a reason for cancelling its participation in the transaction.  Next, Daniel Schiffer, former MCN senior vice president and general counsel, testified to the trial court outside the jury’s presence that MCN was not aware of any such bribe until three years after it withdrew from the urea plant project.  Finally, Vashisht denied to the court that he had paid a bribe. Omagro objected to allowing the jury to hear the bribery evidence by filing a motion in limine.  

A trial court has the sound discretion to admit and exclude evidence.  
Pack v. Crossroads, Inc., 
53 S.W.3d 492, 499 (Tex. App.—Fort Worth 2001, pet. denied).  A party desiring to reverse a judgment on evidentiary error must show that the error probably resulted in an improper judgment.  
Id. 
 The trial court granted the motion because the alleged relevance and/or probative value of the evidence was significantly outweighed by its prejudicial effect. 
Tex. R. Evid.
 403.  The record reveals no abuse of discretion in the court’s ruling.  We overrule the fourth issue.

In the fifth issue, MCN asserts that the trial court used an incorrect date for accrual of prejudgment interest.  The date from which statutory prejudgment interest should begin is a question of law that an appellate court must review 
de novo
.  
See generally Johnson v. City of Fort Worth
, 774 S.W.2d 653, 655-56 (Tex. 1989).  Prejudgment interest accrues on the amount of a judgment during a period that begins on the earlier of the 180th day after the date a defendant like MCN receives written notice of a claim against it, or the date the suit is filed.  
Tex. Fin. Code Ann. 
§ 304.104 (Vernon Supp. 2003); 
Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 
962 S.W.2d 507, 531 (Tex. 1998).  A “claim” is a demand for compensation or an assertion of a right to be paid.  
Johnson,
 962 S.W.2d at 531.

On October 29, 1998, Vashisht sent a letter to MCN, demanding Omagro’s right to be paid by MCN.  The letter was Omagro’s claim.  
Id.
  The trial court used this date to calculate prejudgment interest.  We overrule MCN’s fifth issue.

Omagro’s Cross-Point

Once the evidence in the trial closed, the trial court granted a directed verdict against Omagro on its cause of action for promissory estoppel.  In a sole cross-point, Omagro complains that it is entitled to a new trial of its claim for promissory estoppel.  

In reviewing a directed verdict, we must consider all of the evidence in the light most favorable to Omagro, the party against whom the verdict was granted, disregarding all evidence and inferences to the contrary.  
See Smith v. Elliott,
 68 S.W.3d 844, 846 (Tex. App.—El Paso 2002, pet. denied).  If conflicting evidence of probative value on any theory of recovery exists, an instructed verdict is improper, and we must remand the case for jury determination of the issue.  
Id.
  

If a promisee has reasonably and detrimentally relied on an otherwise unenforceable promise, he may have a cause of action for promissory estoppel.  
Wheeler v. White
, 398 S.W.2d 93, 96-97 (Tex. 1965).  Although normally a defensive theory, it may become available as a cause of action to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise.  
Id.
 at 97.  The elements of that cause of action include a promise, the promisor foreseeing that the promisee will rely on it, and detrimental reliance by the promisee.  
English v. Fischer,
 660 S.W.2d 521, 524 (Tex. 1983).

We have already held that the record contains legally sufficient evidence for a reasonable jury, as charged in this case, to find that negligent misrepresentations were made by MCN representatives.  We will not revisit that evidence here.  In connection with its sole cross-point, Omagro now argues generally that the evidence showing negligent misrepresentations via words and conduct of MCN representatives (Robles, Sharma, and Pai), equals more than a scintilla of evidence to support Omagro’s promissory estoppel claim.  We disagree because Omagro does not identify or make clear the specific nature of the promise or promises it alleges the MCN representatives made.  We overrule Omagro’s sole cross-point.

Conclusion

We have carefully considered and overruled MCN’s five issues for the reasons stated. We hold that on the issue of negligent misrepresentation, the evidence is legally sufficient to support the jury’s finding for Omagro. The issue presented by Omagro’s sole cross-point is overruled.  We affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

[DELIVERED FEBRUARY 6, 2003]