# NO. 12-23-00050-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***RDA PROFESSIONAL BEAUTY SUPPLY INC. AND VELVIA DEANNE KENNEL, APPELLANTS/ CROSS-APPELLEES*** | § | *APPEAL FROM THE 4TH* |
| ***V.*** | § | *JUDICIAL DISTRICT COURT* |
| ***KRISTAL K. CLAY, APPELLEE/ CROSS-APPELLANT*** | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellants RDA Professional Beauty Supply Inc. (RDA) and Velvia Deanne Kennel appeal from the trial court's judgment entered following a jury trial. In ten issues, they challenge the sufficiency of the evidence, the applicability of the economic loss rule, the award of damages, Appellee Kristal K. Clay's ability to challenge the trial court's judgment, and venue. In a single issue on cross appeal, Clay asserts that this Court should remand the entire case in the event it reverses the portion of the judgment in her favor. We reverse and render in part and affirm as modified in part.

## BACKGROUND

RDA sells haircare products and equipment to hair salons, barber shops, beauty schools, and stylists through its retail stores. Kennel (sometimes referred to as "Dee" in the record) formed RDA on June 7, 2013, after purchasing the assets of a similar company. Initially, Kennel owned all of RDA's 1,000 authorized shares. Kennel sought to hire Clay, a former coworker, to manage RDA's finances, and offered to give Clay a 25% interest in RDA if she would accept the position. Clay agreed, and on October 1, 2013, RDA passed a resolution appointing Kennel as

President and CEO of the corporation and Clay as Secretary, Treasurer, and CFO. Kennel then transferred 250 of her shares in RDA to Clay. Clay was solely responsible for RDA's bookkeeping and accounting, for which she used Intuit's QuickBooks software program. Clay provided regular financial reports to Kennel. Kennel allegedly did not know how to use the accounting software and did not have passwords to access RDA's online bank accounts or credit card accounts.

In December of 2019, Kennel became concerned that she was not sufficiently informed about RDA's finances and obtained the passwords from Clay for RDA's QuickBooks, online banking, and credit card accounts. Kennel discovered that Clay recorded large payments from RDA to both herself and Kennel as loans to shareholders.[1] The note balances at the end of 2019 showed a loan balance for Clay of $253,291.00, and a loan balance of $230,747.00 for Kennel. Kennel additionally learned that Clay issued company credit cards to herself and other members of her family, which they used to pay personal expenses such as dental bills, pet care, and costs for travel unrelated to RDA. Based upon these events, Kennel terminated Clay's employment with RDA. Subsequently, Kennel performed a detailed review of RDA's finances and spending, and discovered that from 2015 to 2019, Clay misappropriated a total of $635,771.00 from the corporation.

**Court Proceedings**

On December 3, 2020, Clay sued RDA and Kennel in Rusk County, alleging breach of contract and negligent misrepresentation. Clay alleged the existence and breach of two oral contracts at issue in this appeal. Regarding the first contract, Clay claimed that she and Appellants orally agreed that Kennel's and Clay's "pay, benefits, and perks" from RDA would be equal, except that Kennel would receive $10,000.00 more per year (hereafter the Compensation Agreement). Clay's claim for negligent misrepresentation similarly alleges that Kennel represented that she and Clay would be partners, operate RDA as equals, and receive equal compensation for their respective efforts. But instead, Clay alleged Kennel received much greater compensation than Clay did throughout her involvement with RDA. Regarding the second contract, Clay alleged that at the meeting wherein Kennel terminated Clay's employment with RDA, Kennel and RDA orally agreed to buy Clay's shares in the corporation following both

---

[1] QuickBooks requires that the operator supply a "code" for each business expense recorded, designating the general type of the expense.

parties procuring an "evaluation" (hereafter the Separation Agreement). In the interim, Clay would receive payments of $5,000.00 per month, up to a maximum of $50,000.00, and the amount of such payments would be deducted from Clay's payment for the eventual sale of her shares.

Appellants moved to transfer venue on the ground that few or no events or omissions giving rise to Clay's claims occurred in Rusk County, which the trial court denied following a hearing. On February 9, 2021, Appellants countersued Clay for breach of fiduciary duty (against both RDA and Kennel) and money had and received. The parties did not reach any extrajudicial resolution or settlement, and this matter proceeded to a jury trial.

**The Jury's Verdict**

In response to the first jury question, the jury found that Clay and Appellants agreed that Clay's and Kennel's "pay, benefits, and perks" from RDA would be equal except that Kennel would receive $10,000.00 more per year. The jury also found that both Kennel and RDA failed to comply with this agreement. Because of these findings, the third question instructed the jurors to determine what sum of money would compensate Clay for her damages resulting from such failure. The jury's answer was zero.

In response to the fourth jury question, the jury found that Clay and RDA agreed that upon her exit from RDA, Clay would receive a payment of $5,000.00 per month (up to $50,000.00) to be repaid from the sale of Clay's RDA shares to Kennel for an appraised value. In response to the fifth and sixth questions, the jury determined that RDA (but not Kennel) failed to comply with the agreement, and that Clay should receive $50,000.00 as compensation.

In response to the seventh jury question, the jury found that Kennel made a negligent misrepresentation on which Clay justifiably relied. The eighth question instructed the jurors to determine what sum of money would compensate Clay for her damages resulting from said reliance. This time, the jury's response was, "$835,000.00."

Finally, in response to the ninth and tenth jury questions, the jury determined that Clay failed to comply with her fiduciary duty to RDA, and in considering "the amount of money . . . that was misappropriated by Kristal Clay from RDA," damages in the amount of $235,000.00 were appropriate.[2]

---

[2] The jury made additional findings as to Appellants' claims for money had and received and exemplary damages, which are not at issue in this appeal.

Clay moved the trial court to enter her proposed judgment based upon the jury's verdict. The trial court entered Clay's proposed judgment. Appellants filed a motion to modify, correct, or reform the judgment, a motion for judgment notwithstanding the verdict, and a motion for a new trial. Following a hearing, the trial court denied all post-trial motions. This appeal and cross appeal followed.

## ISSUES PRESENTED

Appellants generally ask this Court to (1) reverse the portions of the trial court's judgment against Kennel and RDA on Clay's claims for negligent misrepresentation and breach of contract, (2) render a take-nothing judgment on those claims, and (3) affirm the trial court's judgment against Clay on Appellants' claim for breach of fiduciary duty. In the alternative, Appellants request that we reverse and remand "the entire case" for a new trial.

Clay's sole cross-issue, labeled a "conditional issue," contends that if we reverse the trial court's judgment in Clay's favor on her negligent misrepresentation claim and remand that claim for a new trial, then we should remand all of the parties' claims for a new trial.

## ECONOMIC LOSS RULE

In their first issue, Appellants contend that the economic loss rule bars Clay's negligent misrepresentation claim against Kennel.

### Applicable Law

The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to fulfill a contractual obligation when the harm consists only of the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see also* *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 397 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (economic loss rule precludes recovery in tort when the only economic loss to the plaintiff is subject matter of contract). In operation, the rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007).

Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that she suffered an injury that is "distinct, separate, and independent" from the economic losses recoverable under a breach of contract claim. *Guerrero-McDonald v. Nassour*, 516 S.W.3d 198, 210 (Tex. App.—Eastland 2017, no pet.) (citing *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797–98 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[I]f a negligent misrepresentation claim only seeks benefit of the bargain damages … (1) a plaintiff cannot establish an independent injury that is distinct from the economic losses recoverable under a breach of contract claim and (2) the economic loss rule bars any recovery of these damages under the negligent misrepresentation claim.")). "[T]he damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998).

## Analysis

As an initial matter, we must determine whether Appellants preserved this issue for our review by raising it for the first time in a post-trial motion. Clay argues against preservation because Appellants did not object to the jury charge which allowed for recovery of both tort and contract damages.

In *Equistar Chemicals, L.P. v. Dresser-Rand Co.*, a products liability action, the Supreme Court of Texas held that a defendant (Dresser) failed to preserve error as to the application of the economic loss rule when it did not plead the rule, reference the rule in any motions, or object to the jury charge on the basis of the rule. 240 S.W.3d 864, 868 (Tex. 2007). Further, Dresser did not mention the economic loss rule in any of its pre- or post-trial motions; however, the appellate court found that Dresser's general no-evidence complaints encompassed its assertion of the economic loss rule. *Id.* In overturning that finding, the Court noted that Texas law provides defective product remedies in both tort and contract, but the economic loss rule would apply when "losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Id.* at 867. However, in *Equistar*, the jury was only asked to find one damages amount and was not instructed to distinguish the damages resulting from its respective findings that the defendant committed torts and that the defendant breached a contract. *Id.* In finding that Dresser failed to preserve error on the issue, the Court stated, "If Dresser believed that the jury charge presented an improper measure of damages because it allowed the

jury to find both tort and contract damages by a single answer, it was required to timely object and make the trial court aware of its complaint in order to preserve error for appeal." ***Id.***

Subsequently, in ***MEMC Pasadena, Inc. v. Riddle Power, LLC***, an appellate court found that a defendant preserved error as to the economic loss rule when it raised the issue for the first time in a post-trial motion. 472 S.W.3d at 411 n.8. The court distinguished the case from ***Equistar*** by noting that ***MEMC*** involved a different application of the economic loss rule than the one applied in products liability actions. ***Id.*** The court further noted that asserting a question of law (such as the applicability of the economic loss rule) in a post-trial motion "preserves an issue for review if the legal question is one that the trial court is not required to resolve before the jury could properly perform its fact-finding role." ***Id.*** (citing ***Holland v. Wal-Mart Stores, Inc.***, 1 S.W.3d 91, 94 (Tex. 1999)). Specifically, the trial court was not required to resolve the applicability of the rule before the jury could assess whether the defendant entity had been negligent at all and the percentage of its responsibility. ***Id.***

Most recently, in ***Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*** (a case involving claims for breach of contract and conversion), an appellate court found that the appellee preserved error as to the economic loss rule by raising same in its oppositions to the appellant's pre-remand and post-remand motions for judgment. 599 S.W.3d 618, 633–34 (Tex. App.—Dallas 2020, no pet.). The court similarly distinguished the matter from ***Equistar*** by noting that that case involved the version of the economic loss rule applicable to products liability cases. ***Id.*** at 636 n.8. Further, because the jury in ***Equistar*** was only asked to find one damages amount for both tort and contract, the defendant therein would have had to object to the improper submission to preserve its economic loss rule argument; the "one damages amount" issue was not present in ***Dixie Carpet***. ***Id.*** at 636 n.8.

In this case, the jury charge contained separate damages questions for Clay's separate claims of breach of the Compensation Agreement and negligent misrepresentation, and the jury determined a separate damages amount for each claim, so the "one damages amount" issue present in ***Equistar*** is not present here. Further, similar to the situation in ***MEMC*** (and because the damages questions were separated), it was not necessary for the trial court to resolve Kennel's economic loss rule issue of law before the jury performed its factfinding role. If the jury found that the Compensation Agreement was either nonexistent or nonbinding (and thus there was no contract related to that subject matter), then the economic loss rule would have no

6

application. Similarly, if the jury found in Kennel's favor on the negligent misrepresentation claim, there would be no economic loss rule issue, because there would be no liability for Kennel under the tort claim. Therefore, we conclude that Kennel preserved the economic loss rule issue for appellate review by raising same in her post-trial motion.

We now turn to the question of whether the economic loss rule applies to bar Clay's recovery of damages under her tort claim for negligent misrepresentation. We note that, contrary to Clay's assertion, Texas courts have not chosen to condition the application of the economic loss rule on whether the jury actually awarded the plaintiff damages under claims for both tort and contract.[3] The rule does not state that a plaintiff cannot recover in *both* contract and tort; rather, the economic loss rule precludes *any* recovery in tort for the economic losses recoverable (not necessarily actually recovered) under a claim for breach of contract. *See **Guerrero-McDonald***, 516 S.W.3d at 210. This is because when the damages sought are the result of a breach of a contractually created duty, the action itself "sounds in contract alone." ***MEMC Pasadena, Inc.***, 472 S.W.3d at 397. Stated differently, when the only economic loss to the plaintiff is the value she expected to receive under a contract, that plaintiff is confined to contractual remedies to recover for that loss. *See **Chapman Custom Homes, Inc.***, 445 S.W.3d at 718; ***Lamar Homes, Inc.***, 242 S.W.3d at 12–13. This is so even when the breach could reasonably be viewed as a consequence of a contracting party's negligence. ***Lamar Homes, Inc.***, 242 S.W.3d at 12–13. Also contrary to Appellee's argument, the economic loss rule applies to claims for negligent misrepresentation where the damages sought comprise the benefit of the contractual bargain. *See, e.g.*, ***D.S.A., Inc.***, 973 S.W.2d at 664; ***Severs v. Mira Vista Homeowners Ass'n, Inc.***, 559 S.W.3d 684, 703 (Tex. App.—Fort Worth 2018, pet. denied); ***Guerrero-McDonald***, 516 S.W.3d at 210. To avoid application of the rule, the plaintiff has the burden to establish an injury or loss attributable to the alleged negligent misrepresentation that is "distinct, separate, and independent" from the loss of her contractual expectancy. ***Guerrero-McDonald***, 516 S.W.3d at 210; *see also **Sterling Chemicals, Inc.***, 259 S.W.3d at 797–98.

---

[3] Clay cites to ***MCN Energy Enterprises, Inc. v. Omagro de Colombia, L.D.C.*** as standing for the proposition that "because the jury found for the defendant on the contract claim, there was no economic-loss rule problem." 98 S.W.3d 766, 772 (Tex. App.—Fort Worth 2003, pet. denied). However, the jury in ***MCN*** found that there was *no* contract between the parties, so the appellate court found that the economic loss rule (which the opinion does not mention by name) did not bar a damages award for negligent misrepresentation. *Id.* In contrast, here, the jury found that there *was* a contract between RDA and Clay regarding Clay's compensation, and that Appellants breached that contract; however, the jury declined to award damages for the breach.

7

As found by the jury in its answer to the first jury question, the Compensation Agreement provided that "Kristal K Clay, on the one hand, and Deanne Kennel and RDA Professional Beauty Supply, Inc, on the other hand, agree[d] that their pay, benefits and perks from RDA Professional Beauty Supply, Inc, would be equal except that Kennel would receive $10,000 more a year then Kristal K Clay[.]" And both jury question three (damages for breach of the Compensation Agreement) and jury question eight (damages for negligent misrepresentation) instruct the jury to consider the same single element of damages "and none other,"— that element being "[t]he amount of pay, benefits and perks that Deanne Kennel received from RDA Professional Beauty Supply, Inc. in excess of the amount agreed to in jury question number one, if any." That is, the jury charge instructs the factfinder to consider (in determining damages for both Appellants' breach of the Compensation Agreement and Kennel's alleged negligent misrepresentation) only the amount of money that would make equal the amounts of "pay, benefits, and perks" received by Clay and Kennel (excepting the additional $10,000.00 per year to Kennel), under the terms of the Compensation Agreement.

Appellants and Clay were parties to the Compensation Agreement, and Clay sued Appellants for allegedly breaching that contract. Clay's First Amended Petition, her live pleading at the time of trial, does not allege any separate injury or category of damages specific to her claim for negligent misrepresentation. Finally, in reviewing the jury charge, the measure of the damages Clay sought to recover under both her breach of contract claim and her negligent misrepresentation claim were identical, and both depend on an affirmative answer to the first jury question—namely, that Appellants and Clay had a contract regarding Clay's compensation. That is, if the jury had found in answering the first jury question that there was no contract, then per the jury charge, the amount of damages for the negligent misrepresentation would have necessarily been zero. Clay does not argue that she alleged before the trial court the independent injury required to overcome the application of the economic loss rule to her claim for negligent misrepresentation, and we find that the record similarly fails to establish any such independent injury. For this reason, we conclude that Clay's claim against Appellants regarding her compensation as an employee of RDA sounds solely in contract, and the economic loss rule bars her recovery of any tort damages from Kennel under her negligent misrepresentation claim.[4]

---

[4] In her sole conditional counter-issue as cross-appellee, Clay contends that "[i]f, for any reason, the Court remands Clay's claim for negligent misrepresentation, the Court then should reverse and remand the entire case."

Accordingly, we sustain Appellants' first issue.[5]  *See MEMC Pasadena, Inc.*, 472 S.W.3d at 397.

<b><u>LEGAL SUFFICIENCY OF EVIDENCE</u></b>

In their third issue, Appellants challenge the legal sufficiency of the evidence to support the jury's findings regarding breach of contract (specifically the Separation Agreement).

**<u>Standard of Review</u>**

Legal sufficiency questions the existence of any evidence to support a particular finding, and essentially claims the evidence at trial can point to only one legal outcome—that is, the opposite of the outcome made by the fact finder. *See, e.g.*, ***Ford Motor Co. v. Ridgway***, 135 S.W.3d 598, 601 (Tex. 2004).  When a party challenges both the legal and factual sufficiency of the evidence, appellate courts should decide the legal sufficiency issues first. ***Altice v. Hernandez***, 668 S.W.3d 399, 409 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding.  ***Bright v. Addison***, 171 S.W.3d 588, 595 (Tex. App.—Dallas 2005, pet. denied).  Our review is restricted to the jury charge as submitted when there was no objection to the instruction.  ***Seger v. Yorkshire Ins. Co.***, 503 S.W.3d 388, 407 (Tex. 2016).  To analyze a legal sufficiency challenge, we must determine whether the evidence presented would enable reasonable and fair-minded people to make the finding under review.  ***City of Keller v. Wilson***, 168 S.W.3d 802, 827 (Tex. 2005).  A legal sufficiency review "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 821-22, 827.

The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony; the jurors are entitled to believe one witness and disbelieve another.  *Id.* at 819. On

---

She repeats, "were the Court to somehow reverse and remand Clay's recovery under the negligent misrepresentation claim, the Court should in that event reverse and remand the entire case, including RDA's recovery from Clay." Because we do not reverse and remand on the issue of negligent misrepresentation, we need not address this counter-issue. *See* TEX. R. APP. P. 47.1.

[5] Because we conclude that the economic loss rule precludes Clay's negligent misrepresentation claim and any recovery of damages thereunder, we do not reach Appellants' second and seventh issues regarding the legal and factual sufficiency of the jury's findings pertaining to that claim. *See id.*

appeal, we assume the jury resolved all conflicts in the evidence and all conflicting inferences reasonably drawn from the evidence in accordance with the verdict. *Id.* at 821.

**Applicable Law**

The existence of a valid contract between the parties is a prerequisite to a finding of breach of contract. ***Domingo v. Mitchell***, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. ref'd). For a contract to be valid and enforceable, it must address all essential and material terms of the parties' agreement with sufficient definiteness to enable a court to understand the parties' obligations and give an appropriate remedy for a breach. ***Fischer v. CTMI, L.L.C.***, 479 S.W.3d 231, 237 (Tex. 2016); *see also* ***Farone v. Bag'n Baggage, Ltd.***, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.) (terms of an oral contract must be definite, certain, and clear as to all essential terms or oral contract fails for indefiniteness). An appellate court decides whether a contract contains all essential terms on a case-by-case basis, and the "primary purpose" of the contract governs this determination. ***Rustic Nat. Res. LLC v. DE Midland III LLC***, 669 S.W.3d 494, 501 (Tex. App.—Eastland 2022, pet. filed). When an agreement leaves material matters open for future agreement and that agreement never occurs, the contract is not sufficiently definite, constitutes merely an agreement to agree, and is not binding on the parties. ***Playoff Corp. v. Blackwell***, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied); *see also* ***Martin v. Martin***, 326 S.W.3d 741, 749 (Tex. App.—Texarkana 2010, pet. denied); ***Cent. Texas Micrographics v. Leal***, 908 S.W.2d 292, 297 (Tex. App.—San Antonio 1995, no pet.) (no enforceable contract "where the agreement of the parties leaves an essential term for later determination *and it is never determined*.") (emphasis in original). An agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced. ***Meru v. Huerta***, 136 S.W.3d 383, 391 (Tex. App.—Corpus Christi 2004, no pet.).

The question of whether a particular contract is an unenforceable agreement to agree is a question of law. *See* ***Martin***, 326 S.W.3d at 746-47 (citing ***Mickens v. Longhorn DFW Moving, Inc.***, 264 S.W.3d 875, 880 (Tex. App.—Dallas 2008, pet. denied)).

**Analysis**

As an initial matter, Clay contends that Appellants failed to preserve error on this argument because they did not specifically raise the issue of legal enforceability in their post-trial motions. However, as the Texas Supreme Court has explained, a general "no evidence"

complaint directed to a specific jury issue is usually sufficient to preserve error without further detail as to why no evidence exists, and the rules regarding the specificity of post-trial objections should be construed liberally. *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). Appellants raise just such a general complaint in their motion for judgment notwithstanding the verdict,[6] so we conclude that said motion preserved error on Appellants' legal sufficiency point related to the enforceability of the Separation Agreement.

Appellants allege that the Separation Agreement is not a valid, enforceable contract, but only an agreement to agree, because it does not provide a price for the shares. The price to be paid for the object of a sale is an essential element of a sales contract and is therefore a material term for this contract. *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 20 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The fourth jury question, which the jury answered affirmatively, asks:

> Did Kristal K Clay, on the one hand, and Deanne Kennel and RDA Professional Beauty Supply, Inc, on the other hand, agree that when Crystal K Clay exited RDA Professional Beauty Supply, Inc that she would be paid the sum of $5,000 per month (up to $50,000), to be deducted from the sale of Kristal K Clay's shares in RDA Professional Beauty Supply, Inc to Deanne Kennel for an appraised value?

The parties do not dispute that the Separation Agreement was solely an oral contract, and that Clay never had a written agreement of any kind with Kennel or with RDA. At trial, Clay testified as follows regarding the terms of the Separation Agreement:

> On the day that I was fired, Dee and I both came to an agreement that she would buy me out that day. And she offered $5,000 a month for up to $50,000 to be deducted off the sale of the purchase … So the day of our separation, we discussed that we would both -- as soon as the taxes were filed that we would both get an evaluation of the company and we would come to an agreement, and then she would purchase the shares from me.

Upon our review, this testimony is the only direct evidence in the record concerning the terms of the Separation Agreement.[7] Elsewhere, Clay testified that she and Kennel came to an agreement on "buyout" on "[t]he day that she fired me," but did not specify further.

---

[6] To preserve error on a legal sufficiency point of error, the appellant must raise the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991).

[7] Neither the e-mail nor the letter from Kennel that Clay referenced in her testimony appears in the record.

Clay's testimony makes clear that the primary goal of the Separation Agreement was Appellants' future purchase of Clay's shares in RDA, and that the agreed-upon monthly payments were not merely severance or additional compensation but were instead an advance on the purchase price of the shares. However, the Separation Agreement also explicitly leaves the material price term open for later determination, pending the completion of at least two competing "evaluation[s]" and subsequent negotiation between the parties. The parties do not dispute that no such evaluations ever occurred, nor is there any indication that they later came to an agreement as to price. Specifically regarding an oral agreement to transfer stock, the terms must state "the specific quantity of shares and the specific price" in order to be considered clear, certain, and definite. *See* ***Selzer v. Dunn***, No. 12-12-00150-CV, 2014 WL 356992, at \*4 (Tex. App.—Tyler Jan. 31, 2014, pet. denied) (mem. op.) (citing ***Gannon v. Baker***, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (op. on remand)). For this reason alone, the Separation Agreement is unenforceable. Even if this were not so, Appellants and Clay left a material term open for later determination, but the record before us indicates that determination never occurred—a factual situation that renders the Separation Agreement an unenforceable "agreement to agree" as a matter of law. *See* ***Martin***, 326 S.W.3d at 746-47; ***Leal***, 908 S.W.2d at 297.

Although courts have implied terms (including price terms) when the circumstances of a contract left little doubt as to the parties' intentions, we cannot imply terms where the parties did not actually reach an agreement, but merely planned to reach an agreement that never came to fruition. ***Kottke v. Scott***, No. 03-10-00071-CV, 2011 WL 1467194, at \*5 (Tex. App.—Austin Apr. 14, 2011, no pet.) (mem. op.) (citing ***Ski River Dev., Inc. v. McCalla***, 167 S.W.3d 121, 134 (Tex. App.—Waco 2005, pet. denied)). The Separation Agreement does not set forth how the parties intended the evaluations to factor into their negotiations on the sale price. Nor does any record evidence indicate that the parties intended to be bound by any one appraisal price, or any specific amount mathematically derived from the appraisals, as the purchase price for the shares. Though not specifically addressed, another material term for which there is no evidence is the date as of which the value of RDA, and accordingly its stock value, is to be determined. The record indicates that on the day Clay was fired, RDA did not have enough liquid capital to cover the upcoming payroll, requiring Kennel to borrow money to keep RDA in business. However, in the ensuing years since Clay's departure (in which she continued to own 25% of RDA), RDA

has returned to solvency and made a record amount in gross sales. Obviously, the parties will have opposing desires as to the valuation date of the company in relation to the sale of Clay's shares, but the record is silent as to any discussion or agreement by the parties as to this date. In summary, the record evidence regarding the Separation Agreement fails to provide either a set price or a "formula or standard" by which to determine same. *Fischer*, 479 S.W.3d at 241. In the absence of this information (or any information setting forth *how* the parties intended to fix a price), this Court has no ability to determine the sale price upon which the parties would have eventually agreed, or any other terms of the sale, cannot approximate the amount which Clay would have received after the $50,000.00 offset, and therefore cannot fashion an appropriate remedy for any breach. *See id.* at 237; *Meru*, 136 S.W.3d at 391.

We conclude as a matter of law that no binding contract exists providing for an advance on the eventual sale price of Clay's RDA shares. The trial evidence does not meet the test of enabling reasonable and fair-minded people to reach the verdict which we review here. *See City of Keller*, 168 S.W.3d at 827. We sustain Appellant's third issue.[8]

## REMAINING ISSUES

Having reversed the verdict in Clay's favor on her claims of negligent misrepresentation and breach of the Separation Agreement, we do not reach Appellants' fourth issue alleging that the trial court erred in failing to order Clay to forfeit said recoveries. *See* TEX. R. APP. P. 47.1.

Moreover, because Clay does not challenge on appeal the verdict or damages award against her for breach of fiduciary duty, we need not reach Appellants' fifth issue regarding Clay's purported waiver of her ability to do so. *See id*. Therefore, we also do not reach Appellants' tenth issue regarding the damages award for this claim. *See id*.

Finally, having reversed the findings in Clay's favor on her claims of negligent misrepresentation and breach of the Separation Agreement, we do not reach Appellants' remaining sixth issue regarding venue they submitted as an alternative issue only. *See id*.

## DISPOSITION

---

[8] Because we sustain Appellants' third issue and find that no binding contract existed as a matter of law, we need not reach Appellants' eighth and ninth issues regarding factual insufficiency of this claim and enforcement of the sale of Clay's shares in RDA to Appellants. *See* TEX. R. APP. P. 47.1.

Having sustained Appellants' first issue, we *reverse* the portion of the trial court's final judgment of November 28, 2022, ordering that Clay recover from Kennel the sum of $835,000.00 for negligent misrepresentation, and *render* judgment that Clay take nothing for this claim.

Having sustained Appellants' third issue, we *reverse* the portion of the trial court's final judgment ordering that Clay recover from RDA the sum of $50,000.00 for breach of contract, and *render* judgment that Clay take nothing for this claim.

We further *modify* the trial court's final judgment to delete the paragraph reducing the amount of RDA's recovery from Clay to $185,000.00 as an offset for Clay's recovery for breach of contract. We additionally *modify* the judgment to delete the paragraph ordering that Clay recover a judgment against Kennel for pre- and post-judgment interest.

We otherwise *affirm* the judgment of the trial court *as modified*.

<u>GREG NEELEY</u>
Justice

Opinion delivered December 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 14, 2023**

**NO. 12-23-00050-CV**

**RDA PROFESSIONAL BEAUTY SUPPLY INC. AND VELVIA DEANNE KENNEL,**
Appellants/Cross-Appellees
V.
**KRISTAL K. CLAY,**
Appellant/Cross-Appellee

Appeal from the 4th District Court
of Rusk County, Texas (Tr.Ct.No. 2020-271)

THIS CAUSE came to be heard on the appellate record, oral argument, and briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be reversed and rendered in part, and affirmed as modified in part.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **reversed** as to the portion of the trial court's final judgment of November 28, 2022, ordering that Kristal K. Clay recover from Velvia Deanne Kennel the sum of $835,000.00 for negligent misrepresentation, and **rendered** that Clay take nothing for this claim.

It is therefore FURTHER ORDERED, ADJUDGED and DECREED that the judgment of the court below be **reversed** as to the portion of the trial court's final judgment ordering that Clay recover from RDA Professional Beauty Supply, Inc. the sum of $50,000.00 for breach of contract, and **rendered** that Clay take nothing for this claim.

It is therefore FURTHER ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** to delete (1) the paragraph reducing the amount of RDA's recovery from Clay to $185,000.00 as an offset for Clay's recovery for breach of contract, and (2) the paragraph ordering that Clay recover a judgment against Velvia Deanne Kennel for pre- and post-judgment interest.

In all other respects, the judgment of the trial court is ***affirmed***.

It is FURTHER ORDERED that all costs of this appeal are hereby adjudged against the Appellee, **KRISTAL K. CLAY**, for which execution may issue; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*